Ellis v. Bray.

*Appeal from St. Louis Court of Appeals.*

AFFIRMED.

*M. Kinealy* for appellant.

*John D. Davis* for respondent.

———————————

ELLIS, *Appellant v.* BRAY.

79 227
105 633
79 227
52a 490
79 227
56a 235
79 227
143 436

1. **The Judgment** in this case is reversed because manifestly unsupported by the evidence.
2. **Statute of Frauds.** When a written memorandum does not purport to be a complete expression of the entire contract, or a part only of it is reduced to writing, the matter omitted may be supplied by parol evidence.
3. **Case Adjudged.** A memorandum was as follows: "Received of Daniel Ellis the sum of $165 to apply as purchase money on a half interest in the following described lands, (describing them)." *Held*, that it was competent to show by parol what was the full amount of the consideration and when payable.

*Appeal from Greene Circuit Court.*—HON. W. F. GEIGER, Judge.

REVERSED.

*Jere C. Cravens* for appellant.

*C. W. Thrasher* and *H. C. Young* for respondent.

RAY, J.—This is an action in the nature of a suit in

equity, originally brought in the Newton circuit court, and afterward, by change of venue, transferred to Greene circuit court, the object and purpose of which will be best understood by plaintiff's amended petition, which is substantially as follows:

That in the spring or summer of 1873, the defendant Bray claiming to have a tax title to the following described tracts of land situate in Newton county, Missouri, to-wit: The south half, southeast quarter section 23, and southwest quarter, southwest quarter section 24, and northwest quarter, northwest quarter section 25 and north half, northeast quarter section 26, all in township 27, range 33, containing in all 240 acres of land, proposed to sell plaintiff an undivided one-half of same for the consideration of $300, representing at the time, that for the consideration aforesaid, he could and would secure and obtain from one Goodrich, the former owner of said land, a good and perfect title to the same; that the plaintiff, after visiting and inspecting said land, in company with said defendant, accepted said proposition, with this further understanding and agreement between them, that the plaintiff, for the consideration aforesaid, was to have his choice of 120 acres of said land, and when so selected, the defendant Bray was to cause the same to be conveyed directly to plaintiff, by said Goodrich, with further understanding also that plaintiff should not be required to pay any part of said $300 until said defendant had so caused the title to said land to be perfected by conveyance from said Goodrich; that afterward, to-wit, on the 30th day of September, 1873, at the special instance and request of said defendant, and for his special accommodation, the plaintiff advanced and paid to defendant on said contract the sum of $165.

The petition then further states that the plaintiff, sometime thereafter, in 1874, and before said defendant had obtained any conveyance from said Goodrich, selected the following tracts of said land, to-wit: "Southeast quarter, southeast quarter section 23, and northeast quarter, north-

east quarter section 26, all in township 27, range 33," and thereupon the said defendant, at the instance and request of plaintiff, and on the further advancement and payment to defendant, by plaintiff, of the sum of $35, executed and delivered to plaintiff, in partial performance of said contract, a quit-claim deed for the land so selected, with the distinct understanding and agreement, however, that the said former contract and agreement on the part of defendant to perfect the title to said lands, by conveyance from said Goodrich, should remain and be in full force and effect.

The petition also, further states that said defendant Bray afterward, in April, 1875, obtained from said Goodrich, the former owner of said land, a deed to himself for all of said land, except the eighty acres so quit-claimed by defendant to plaintiff, as aforesaid; and at the same time, the said defendant Bray, in disregard and violation of his said contract with plaintiff, and for the purpose of cheating and defrauding the plaintiff of his just rights in the premises, caused said Goodrich to convey to the defendant B. F. Kinder, a near relative of the defendant Bray, the eighty acres of land last above described, as aforesaid; that said conveyance to said Kinder was made at the special instance and request of said Bray, and without any consideration whatever from said Kinder, who well knew the obligations of said Bray to cause the same to be conveyed to plaintiff; that plaintiff has often requested said Bray to comply with his part of said contract, and that he has always been ready and willing, and has offered to perform the same on his part, and now brings into court here for defendant the sum of $100, the balance of purchase money, so agreed upon. Wherefore plaintiff prays that whatever interest the said B. F. Kinder acquired in and to said eighty acres of land be divested and for naught held, and that the same be vested in plaintiff, and that, by the proper decree of the court, the title to an undivided one-half interest in and to said lands so conveyed to said Bray by said Goodrich, as aforesaid, be

decreed to and vested in the plaintiff, and for other and proper relief.

To this petition the defendants filed separate answers. That of Bray was as follows:

Comes defendant, James Bray, and for separate answer to plaintiff's amended petition, denies each and every material allegation in said petition contained, except as hereinafter admitted, limited or explained. Defendant further answering says that on the 12th day of June, 1873, he held a tax title on the lands described in said petition, which fact was well known to plaintiff; that he, the defendant, entered into a contract in writing, with plaintiff, to sell to plaintiff and convey to him by quit-claim deed for $200 any two of the forty acre tracts named in said written contract which plaintiff should select, the lands named in said contract being the same as described in the petition—the deed to be made when the $200 should be fully paid. Said plaintiff was to pay interest at ten per cent on all deferred payments. This contract was executed by the said Bray and delivered to plaintiff, whereupon plaintiff paid defendant $5 as a part of the purchase money of said lands; that subsequently, and about the 30th day of September, 1873, plaintiff paid defendant $165 in pursuance of said contract, for which defendant gave plaintiff a receipt in writing. That in the spring of 1874 plaintiff paid the balance of said $200, at which time defendant and his wife executed and delivered to plaintiff a quit-claim deed conveying to plaintiff all the right, title and interest of this defendant in and to the southeast quarter, southeast quarter section 23 and northeast quarter, northeast quarter section 26, all in township 27, range 33, which deed the plaintiff accepted as a full compliance on the part of this defendant with the said contract. And defendant further answering denies that he ever made any such contract with plaintiff as is set forth in said amended petition, either verbal or in writing; and this defendant insists that no verbal contract for the sale of said land would be binding upon this defendant; denies

that Ellis ever agreed to pay him the sum of $300 for said land, and denies that he ever agreed to convey to plaintiff one-half interest in the land described in said petition; denies that he ever agreed to procure from the former owner of said land a deed to plaintiff, or in any manner for plaintiff's benefit; denies that he ever made any contract with plaintiff in reference to said lands, except as hereinbefore set forth; avers that the contract between plaintiff and defendant in reference to said land has been fully executed, and plaintiff has already obtained all the interest in said land which this defendant ever agreed to convey to him. Defendant, therefore, prays judgment against plaintiff and for other proper relief.

The separate answer of Kinder was as follows, to-wit:

Defendant denies each and every material allegation contained in said amended petition, except as hereinafter admitted, limited or explained. Defendant further answering says that he purchased from C. G. Goodrich, through the defendant James Bray, the following portions of said lands, to-wit: Southeast quarter, southeast quarter section 23 and northeast quarter, northeast quarter section 26, all in township 27, range 33; that he paid a valuable consideration for the same; that at the time of said purchase he did not know of and did not have any information of any contract, or understanding, or promise between the plaintiff and said Bray, with reference to said land; that he bought and paid for the same, and took a deed therefor in good faith, believing that said Goodrich had a right to sell and convey the same to this defendant, and believing that no person in the world would be injured and defrauded thereby. Defendant therefore prays judgment, etc.

The replication of each of these answers is a general denial of all new matter set up therein.

The evidence, at the trial in the court below, as we gather from the bill of exceptions, is in substance as follows:

Daniel Ellis, the plaintiff, in his own behalf, testified

substantially to the agreement and facts, as stated in his petition. Among other things he said he met defendant Bray, in the law office of J. P. Ellis, in the spring of 1873; that Bray said he owned 240 acres of land in Newton county near Joplin in Jasper county; that he wanted to sell it; and offered it to him at $2.50 per acre. To induce him to buy, he said it was right in the lead region, and he thought there was lead on it. I told him, if he could make me a good title, I thought I would buy. He said he had two or three tax deeds on the land, and was entitled to another; that the land was formerly owned by Mr. Goodrich, who had not paid the taxes for several years, and he was satisfied, when he knew of the tax title against it, he would make a conveyance for little or nothing. I told him I would go with him to examine the land, and did so. After looking over it, I told Bray that I would pay him $300 for a half interest in the 240 acres, just as soon as he would get Goodrich's title; I was not to pay anything until he perfected the title; he accepted my proposition, and said he would soon arrange the matter with Goodrich. His testimony is full and explicit, to the effect, that the half interest in said land, which was the subject matter of said contract, was that of the fee, and not a mere tax title, and extended to all of said lands. He explicitly says that his contract with Bray was for a perfect title, including conveyance from Goodrich; that no deed was to be made until the Goodrich title was secured, and then he was to pay his money and have the deed made directly to him. The testimony of the plaintiff was corroborated substantially, in nearly, if not quite all its essential and material particulars, by two other witnesses, who repeatedly heard the parties talking over and stating their agreement and understanding of and about the trade in question. These two witnesses were sons of the plaintiff, Wirt and J. P. Ellis. The latter says that "Mr. Bray has told me a hundred times, I believe, that if the Goodrich title could be obtained, it was to enure to the benefit of both my father and himself, and that this

was the agreement between them." The deposition of Goodrich, in several particulars, corroborates plaintiff's evidence. The plaintiff also produced, at the trial, and read in evidence the following receipt in writing, which he testified was written, signed and delivered to him by Bray at the time of the advancement and payment to Bray, by plaintiff, on said contract, of the $165 mentioned in said petition, to-wit:

SPRINGFIELD, Mo., 30th September, 1873.

"Received of Dan'l Ellis, the sum of $165, to apply as purchase money on a half interest in the following described lands, situated in Newton county, Missouri: South half, southeast quarter section 23, township 27, range 33—80 acres; southwest quarter, southwest quarter section 24, township 27, range 33—40 acres; northwest quarter, northwest quarter section 25, township 27, range 33—40 acres; north half northeast quarter section 26, township 27, range 33—80 acres.

JAMES BRAY.

The plaintiff, also, in express terms, denies *in toto*, the agreement and facts constituting the new matter set up in the separate answer of defendant Bray in each and all their particulars; and re-affirms, by his testimony, the version given in his petition of the quit-claim deed for the eighty acres of land in question, and that the same was given and taken simply to show what lands he had then selected and paid for.

The defendant Bray was then sworn and examined, in his own behalf, and testified substantially to the agreement and facts set out in his separate answer, as new matter. But in this he is not corroborated by any witness on his behalf. He denies in express terms, making the agreement claimed and testified to by the plaintiff. To the following question asked by his counsel, to-wit: "In any of the conversations you had with Ellis, previous to the 30th day of September, 1873, when the $165 was paid, was any promise

made by you to convey to Ellis a half interest in that land?" the defendant answered, "I don't think there was, I have no recollection of any such talk." The witness here examined the receipt given by him to plaintiff for the $165, and which is set forth in plaintiff's evidence, and says it is his handwriting. He was then asked to state how the words "one-half interest" came to be in the receipt. His answer was, "To the best of my recollection it must have been a mistake; it should have been one-third, I think." He was then asked to state what interest, in the land, Ellis was then paying him for. His answer was: "He was paying me for a tax title." He was further asked, "On how much of the land was he paying." His answer was, "On an undivided one-third."

On cross-examination, defendant was asked this question: "You say you never made any contract, verbal or otherwise, with the plaintiff, for more than eighty acres of the land?" His answer was, "I don't remember that I did; the receipt shows that I did." The defendant admitted that the receipt in question was in his handwriting, and was asked to explain if he could, how he came to write the words, "Purchase money on a half interest in the following described lands," etc., "when, in fact, you only intended to make a contract to quit-claim two separate forty acre tracts of this amount of land." His answer was, "Well, I have no recollection of how it was; I cannot explain it." Defendant was also asked the following question: "Did you swear in your examination in chief, that the words, "On a half interest," in the receipt, were a mistake, and should have read, "One-third interest." His answer was, "I think I said this way: I thought it ought to, but was not positive." Defendant was then asked the following question: "If you never made any contract with Ellis to sell him any other interest in this land, but the particular two forty acres described in your quit-claim deed to him, how does it come that you now say this receipt should call for an undivided third of the whole 240 acres." His answer

was, "I don't think I said positively in that way, I think I said, I thought it ought to read that way." Witness said that defendant Kinder was his half-brother. When questioned about assigning to plaintiff a certain certificate of purchase from the collector of Newton county, for this 240 acres, for the taxes of 1873, and also about writing certain letters to Goodrich, seeking to obtain title to these lands about the same time, the defendant was asked this further question: "Do you now say that you were accepting money, from Mr. Ellis, for portions of this land, and making transfers of it to him, and at the same time seeking to obtain a title from Goodrich to yourself, your wife or other party." His answer was, "Well, I will have to answer yes, I suppose." The defendant then proceeded to state that the reasons he was trying to control the lands, was to secure or compel a favorable adjustment of certain matters of dispute between him and J. P. Ellis, and in which the plaintiff had no interest.

It was admitted that the defendant Bray, in the spring of 1875, obtained a deed to himself, from C. G. Goodrich, for all the lands in controversy, except the eighty acres mentioned in the quit-claim deed from Bray to Ellis; and that the land last aforesaid was at the same time conveyed by Goodrich to the defendant Kinder, the half brother of defendant Bray, at the instance of Bray, and that Bray furnished the money and paid the consideration to Goodrich for both deeds, which were delivered to defendant Bray, on the payment by him of $250; that said deeds are regular, duly acknowledged, and convey the interest of Goodrich to said lands. Besides this, there was a large mass of unimportant and irrelevant testimony, documentary and otherwise, not necessary to notice.

The defendant Kinder was not examined, and offered no evidence whatever in support of his answer, or in denial of the petition. He was the half-brother of defendant Bray, and seems to have had no participation whatever in the transaction, and no possession or control of said con-

veyance to his name, so procured and held by Bray, to serve his own purpose in the premises.

Upon this state of the testimony, the cause was submitted to the court, and whereupon the court made and rendered its finding and decree as follows, to-wit:

Now at this day this cause coming on to be heard and the parties appearing submit the issues to the court, and the court finds that defendant Bray has complied with his part of the said contract, except that he agreed to convey one undivided fourth interest in the following described lands, which he has not done, to-wit: Southwest quarter southeast quarter of section 23, and northwest quarter northeast quarter of section 26, the southwest quarter southwest quarter section 24 and northwest quarter northwest quarter of said section 25, and that by the terms of said contract the plaintiff is entitled to an undivided one-fourth of the lands last aforesaid, on the payment of $100 to defendant Bray, and it further appearing to the court that the plaintiff has heretofore deposited the sum of $100 with the clerk of said Newton circuit court, and all and singular the premises being seen and fully understood, it is, therefore, adjudged and decreed by the court that said contract be specifically performed by said Bray as to the undivided one-fourth of the lands last aforesaid; and that if defendant shall not, within ten days from the entry of this decree, execute and deliver to said plaintiff, a good and sufficient deed, conveying the same to plaintiff, that the title to the said undivided one-fourth shall be and the same is hereby divested of and from defendant, James Bray, and fully vested, both in law and equity, in the plaintiff, his heirs and assigns forever. And it is further ordered that said clerk of Newton circuit court pay, or cause to be paid, to the defendant, James Bray, the said $100 so deposited with him as aforesaid; and further, that plaintiff take nothing by his said suit as to the said defendant B. F. Kinder, and that the said Kinder recover his costs herein, and that plaintiff have and recover

of and from the defendant Bray his costs in this suit, and have execution therefor.

Thereupon, in due time, the plaintiff filed his motion for a new trial and re-hearing of said cause, for the usual reasons, which motion was by the court overruled, to which action of the court the plaintiff excepted in due time and manner, and brings the case here by appeal. This finding and judgment of the trial court is here assigned for error.

From the record before us it is difficult, if not impossible, to see how the trial court, upon the evidence before 1. THE JUDGMENT.  it, could have reached the conclusions embodied in its finding and judgment above set out. If the testimony of the defendant Bray was to be believed at all, the finding and decree should have been altogether for him, as claimed in his brief. But the finding and decree, as made and rendered, is manifestly unsupported by the testimony, and ought not to stand. Indeed the contract, as found, is neither that set up in the petition nor that claimed by the answer, but something altogether different from either. The great preponderance of the evidence, as we view it, is largely, and we think conclusively, in favor of the plaintiff, upon the whole case, and against both defendants, and the finding and decree should have been accordingly, as prayed for in the petition. The case, upon the testimony, is, we think, too plain for argument. A half interest in the fee of the whole 240 acres, including the conveyance from Goodrich, was manifestly the matter of the contract between the parties, and not merely a tax title interest in two of the forties only. Such also is the legal intendment of the receipt itself. The conduct of defendant Bray in causing the conveyance to his half-brother, Kinder, and in refusing to perform his part of said contract, was, under the circumstances, bad faith and a fraud upon plaintiff. Kinder paid nothing, seems to have had no agency in procuring said conveyance, which was made and delivered to Bray, at his instance, and seems to have been retained by him to subserve his own purposes, and Kinder really had no pos-

session or control of same. It also appears that plaintiff had paid Bray $200 of the purchase money, and had tendered and deposited in court, for his benefit, $100 more, the balance of the agreed price, and that plaintiff, under all the circumstances of this case, is entitled, in law and equity, to a specific performance of said contract, as asked in his petition.

It is also objected by defendant Bray, that the written receipt offered in evidence by the plaintiff is not a sufficient 2. STATUTE OF FRAUDS note or memorandum of the contract to take the case from the operation of the statute of frauds, and that parol evidence should not have been received to supply any of its terms. This objection, also, under the decisions of this court in like cases, we think, is not well taken. In the case of *O'Neil v. Crane*, 67 Mo. 251, the court states the doctrine thus: "Parol evidence is clearly inadmissible to contradict, alter or vary a written contract, but when a written memorandum of a contract does not purport to be a complete expression of the entire contract, or a part of it only is reduced to writing, the matter thus omitted may be supplied by parol evidence." In support of this position the cases of *Rollins v. Claybrook*, 22 Mo. 407; *Moss v. Green*, 41 Mo. 389; *Briggs v. Munchon*, 56 Mo. 467, and 1 Greenleaf Ev., § 284, a, are cited. Bray's receipt of 30th September, 1873, offered and read in evidence by the plaintiff in this case, as hereinbefore set out, is, at most, but a note, or memorandum of the contract in question, and manifestly does not purport to be a complete expression of the entire contract between these parties, a part of which only is reduced to writing, and according to the authorities, the matters thus omitted may be, in these particulars, supplied by parol evidence. The memorandum in this case is apparently silent on some points. It does not certainly disclose what was the entire amount of the consideration of the purchase of said half interest in said lands, or when the remainder thereof was due and payable, and the testimony offered to explain it, in these particulars, being in no

wise contradictory to the writing, was, under the authorities cited, properly admitted.   In the recent case of *Lash v. Parlin*, 78 Mo. 391, the same question is elaborately considered and discussed by Commissioner Winslow, and the doctrine of the foregoing cases fully sustained and re-affirmed.

For these reasons, the judgment of the trial court is reversed and the cause remanded with directions to enter up a decree as prayed for in the petition in conformity to this opinion.   All concur.