ROBERT SHARP *et al.*, Appellants, v. J. W. STURGEON
*et al.*, Respondents.

St. Louis Court of Appeals, April 7, 1896.

1. **Sales:** EFFECT OF RECITALS OF REGISTRY IN STUD BOOKS: COMPE-
TENCY OF PAROL EVIDENCE. A bill of sale for a stallion recited that
the animal was registered under certain numbers in the "National
Register French Draft Horses" and "Percheron Stud Book of Amer-
ica," and in the same connection mentioned the "Percheron Stud
Book of France," but contained after such mention only a dash and
no number. The bill of sale further provided that the vendor's guar-
anteed nothing except as stated therein, and this provision was fol-
lowed by a certain undertaking as to the breeding qualifications of
the stallion. *Held,* that the effect of the said recitals of registry was
a question of fact for the jury, and that, in connection therewith, oral
evidence of what passed between the parties at the sale, as well as
of the custom of the trade, if there was any, was competent.

2. ————: DAMAGES FOR BREACH OF WARRANTY: SUFFICIENCY OF EVI-
DENCE. When a warranty is made that a stallion which is being sold
is registered in two certain stud books, and such registry exists in
one but not in the other of these books, and there is evidence of
the effect of the absence of both registries, but none as to the effect
of the absence of the one registry alone, an instruction warranting the
assessment of substantial damages for the breach of the warranty is
not supported by the evidence and is, therefore, erroneous.

*Appeal from the Audrain Circuit Court.*—HON. E. M.
HUGHES, Judge.

REVERSED AND REMANDED.

*W. W. Fry* and *J. D. Barnett* for appellants.

*George Robertson* for respondents.

ROMBAUER, P. J.—This is a suit upon a promissory
note by the payees against the maker. The defense
interposed at the trial was that the note was given in
part payment of the purchase of a Percheron stallion,
bought by the defendants from the plaintiffs; that the

stallion was sold with certain warranties as to its registry, which proved to be false; that the purchase price of the stallion was $1,100, which was its market value as warranted, but that it was not registered as warranted, and, without such registration, was not worth more than $300, whereby the defendants were damaged in the amount of such difference in value. The answer then states that the defendants had already paid $600 and interest on account of the purchase price, and sets up the breach of warranty in defense of plaintiff's action on the note, with a prayer for judgment over by way of counterclaim. The answer states the warranty to have been "that the horse was a regular French Draft and Percheron horse, having a regular registered pedigree in both strains of said blood in the 'National Record of French Draft Horses,' the 'Percheron Stud Book of America' and the 'Percheron Stud Book of France.' "

The plaintiff's reply denied that the horse was sold with the warranty as claimed in the defendant's answer. It claimed that the horse was sold under a written contract, which is set out in full in the reply, and that there was no other contract between the parties. The reply further states that all of the facts stated in such written contract are true, and prays judgment as in the petition.

The cause was tried by a jury and the trial resulted in a verdict for the defendants on their counterclaim in the sum of $283.63, upon which the court entered judgment reciting that the plaintiffs were entitled to nothing on their cause of action, and that the defendants were entitled to judgment on their counterclaim in the amount above stated. The plaintiffs appeal and assign for error the admission of illegal evidence, and the erroneous rulings of the court on instructions given and refused.

As the main controversy between the parties turns upon the construction to be given to the contract of sale, we here insert said contract in full. The contract was partly printed and partly written, and, for the purpose of distinguishing its printed portions from those which are written, we have placed the latter parts in italics. The contract is as follows:

"BILL OF SALE.                    NO.

"For *Peco.*

"This agreement, made and entered into this *28* day of *Feb. 1889*, by and between *Sharp Bros.*, of the first part, and *J. W. Sturgeon*, of *Middletown, Mo.*, of the second part.

"Witnesseth, That the parties of the first part have this day sold to the parties of the second part

Dillon Register $\left\{\begin{array}{l} \textit{the} \text{ stallion } \textit{Peco.} \\ \textit{210} \text{ N. R. F. D. H. } \textit{1430.} \end{array}\right.$

P. S. B. A. *1615.*          P. S. B. F. ———
for the sum of *Eleven Hundred* Dollars, payable as follows:

  *NO.*                              Dollars,
cash in hand, and *Eleven Hundred* Dollars, evidenced by *two* certain promissory notes, of even date herewith, signed by *J. W. Sturgeon and security*, payable at *Peo. Bank, Bloomington, Ill.*, and drawing interest from date until paid at the rate of eight per cent per annum. One for *Six Hundred* . . . . . Dollars . . . payable on or before the *first* day of *March*, 18*90*, and one for *Five Hundred* Dollars, payable on or before the first day of *September*, 18*90*, and one for . . . . . payable on or before . . . . day of . . . . . . . . . . . . . . . 18 . .

"The parties of the first part certify that the above is correct to the best of their knowledge and belief,

and assume no responsibility on account of unsound-
ness, disease or accident, to said horse after leaving
their barns, and guarantee nothing except as herein
stated; but agree that if, with proper treatment and
handling, said horse proves not an *average breeder by
barring mares which have failed to raise a living colt in
the last two years and diseased mares*, they will, at their
option, refund the money paid for said horse, or fur-
nish another horse *of equal merit* in his place, provided
said horse is returned as sound and in as good condi-
tion as when sold by said parties.

"Said horse shall not be considered as having been
fully tested until he shall have been kept by said sec-
ond party two years from the beginning of the first
season he makes after this date, unless he proves not
to be barren the first year. This guarantee shall be
binding on the parties of the first part only on the
express condition, that the party of the second part
strictly complies with all *the* covenants hereinafter
made.

"The party of the second part agrees promptly to
pay the notes above described according to the tenor
of the same, and to make to the said parties of the
first part a written monthly report of the mares bred
to said horse, giving description of each mare bred,
with each date of breeding, and the name and post-
office address of the owner of the mares, and to state
the condition of said horse and how he performs, and
to send said reports to the party of the first part within
five days after the expiration of each month.

"It is also agreed by the party of the second part
that, in the event he sells, transfers or disposes of,
said horse without the written consent of said parties,
then said first parties are released from all guarantees,

"The party of the second part have this day received said horse as by this bill of sale.

"*Dillon Bros. for Sharp Bros.*

"*J. W. Sturgeon.*"

All the testimony adduced concedes the meaning of the capital letters to be as follows: N. R. F. D. H. stands for National Register French Draft Horses; P. S. B. A. stands for Percheron Stud Book of America, and P. S. B. F. stands for Percheron Stud Book of France. All the testimony adduced likewise concedes that the numbers 210, 1430 and 1615, were intended to represent, and did represent, the number under which the horse Peco was supposed to be registered in these various registers. The controversy arises touching the dash following the letters P. S. B. F. The plaintiffs contend that the omission of the number indicates that they made no representation that the horse was registered at all in the Percheron Stud Book of France, while the defendants contend that it indicates that it was so registered, but that the plaintiffs did not warrant or represent any particular number of registry. Which of these contentions is correct, is the first question to be determined.

It will be noticed, in this connection, that the contract does not purport to contain any express warranty as to registry in any book. The contract states that the parties of the first part certify that the above is correct to the best of their knowledge and belief. In view of the fact that a registry number is given in connection with two of the books, and that such registry appears under all the testimony to be valuable, it is fairly inferable that as to these two books a warranty of the registry was intended. It seems to be evident, however, that if these book initials were unaccompanied by any number, they would be utterly meaningless, as there is no recital in any part of the contract that

they refer to registry, and the fact that they refer to registry is merely shown by the number accompanying them. There was no testimony in the case that entries in the "Percheron Stud Book of France" are not numbered. And there was positive evidence on the part of the plaintiffs, that at the time Peco was imported no "Percheron Stud Book of France" was in existence, and consequently he could not be registered in it, and that all this was explained to one of the defendants when they bought the horse.

Owing to the fact that registry of horses is even in this country of comparatively recent date, and of still more recent date in France, the decisions, as far as our investigation extends, do not deal with the effect of recitals of registry in contracts of sale. Whether such recitals are merely descriptive in their character, or are to be treated as warranties, must to a great extent depend upon the custom of trade. It has been uniformly ruled that where, in a contract of sale, the description of a chattel is followed by express words of warranty as to quality, the warranty does not extend to the descriptive recital. Thus the sale of a stallion, "which will be five years old July 18, 1857, and which I warrant sound and kind in every respect," was held not to be a warranty of its age. *Hill v. North*, 34 Vt. 604; *Willard v. Stevens*, 24 N. H. 271. The sale of "a negro boy twenty-six years old, warranted to be sound in mind and body," was held to be a warranty of soundness alone. *March v. Phelps*, 1 Phill. N. C. (Law) 562. In the case at bar the contract contains no express terms of warranty. It does recite, however, that the vendors guarantee nothing "except as herein stated," which recital is followed by a certain undertaking if the horse should not prove an average breeder, etc. Regardless, therefore, of the dash after the letters P. S. B. F. which adds a further

complication, the court erred in instructing the jury that the contract contained express warranties, that the horse was registered in the three books mentioned in the following instruction given on defendant's behalf:

"The court instructs the jury that by the contract read in evidence between the plaintiffs and defendant Sturgeon the plaintiffs guarantee that the said horse, Peco, was registered in the "National Register of French Draft Horses," the "Percheron Stud Book of America," and the "Percheron Stud Book of France," and if the jury believe from the evidence in the case that any part of said guarantee is not true and by reason thereof said horse Peco was of less value at the date of said sale, then the defendants are entitled to damages, and the measure of damages is the difference between the value of said horse as guaranteed and his real value without such part of registration. And the jury are further instructed that, if such difference exceeds the sum of $500, they will find nothing for the plaintiff on said note; and further, if such difference exceeds the sum of $500, then they will find for the defendant on his counterclaim for such excess, not to exceed the sum of $200, with interest thereon at the rate of six per cent per annum since the filing of said set-off on the eleventh day of March, 1892."

All that the court could do under the circumstances was to submit to the jury for their finding, whether, under all the circumstances attending the sale, these recitals constituted a warranty that the horse was so registered. Oral evidence of what passed between the parties at the sale, as well as oral evidence of the custom of trade, if there was such custom, was admissible for the purpose of showing the true meaning and effect of such recitals. The record before us is so imperfect that it is difficult to determine whether such

evidence was admitted or excluded; but, whether it was admitted or excluded, the instruction was erroneous.

The court, against the plaintiffs' objections, admitted evidence of what passed between the plaintiffs' agents and the defendants after the sale. The admission of this evidence was prejudicial error for two reasons: *First,* because anything that passed between the parties after the sale had no tendency to show the terms of the sale, and, *next,* because it nowhere appeared that the plaintiffs' agents had authority to make any representations after the sale in any way affecting the plaintiffs' rights.

A further error justly complained of by the plaintiffs is in the instruction of the court on the measure of defendants' damages. There was substantial uncontradicted evidence tending to show that the horse was registered in the "Percheron Stud Book of America," but no evidence whatever tending to show that he was registered in the "Percheron Stud Book of France." No witness testified as to the difference in the value of the horse, in case the latter registry alone was wanting, although there was evidence tending to show the difference in value if both registries were wanting. Under these circumstances the instruction above set out and given for plaintiffs was misleading in submitting to the jury's finding an element of damages not founded on the evidence, and in omitting the element of damages which the jury might have properly considered but for the fact that data for its consideration were missing. In fact, it is difficult to see how, under the evidence in the case, the court could have charged the jury properly as to the measure of damages.

The foregoing observations lead to the result that the judgment of the court must be reversed and the

cause remanded. What has been said will enable the court and counsel to retry the case on proper lines.

All the judges concurring, the judgment is reversed and the cause remanded.

66 199
69 358

66 199
s81 439

66 199
s83 2

66 199
r151s 90