RICHARD SHARP et al., Appellants, v. J. W. STURGEON et al., Respondents.

St. Louis Court of Appeals, May 24, 1898.

1. **Written Contract:** ORAL TESTIMONY: RECITALS IN CONTRACT INTENDED AS WARRANTIES. Although oral testimony is inadmissible where its tendency is to enlarge the obligations in a written contract of sale of a horse it is admissible as showing the importance attached to the alleged registration of the animal, which fact probably had some tendency to prove that the recitals in the contract as to the registration were intended as warranties.

2. **Instructions.** Where instructions are radically inconsistent, presenting inconsistent theories of a case, it is error to permit them to be given.

3. ———. Instructions which tend to confuse the jury should not be given.

*Appeal from the Audrain Circuit Court.*—HON. E. M. HUGHES, Judge.

REVERSED AND REMANDED.

W. W. FRY and J. D. BARNETT for appellants.

*Prima facie* plaintiffs were entitled to recover upon their note. Defendants assert that they are damaged by reason of breach of warranty, *first*, that the horse was warranted recorded in the Percheron Stud Book of America; and, *second*, that he was warranted recorded in the Percheron Stud Book of France, and that in fact he was recorded or registered in neither

book, and that by reason of such want of record or registration, he was a grade horse only, worth not more than $300.   As to the French book, first, the evidence is not sufficient to show any representation that the horse was registered in the French book; but even had it been true that such representation was made (the lack of French registry is admitted), no damage is shown to result to defendants therefrom.   There is not a scintilla of evidence tending to show that any market value whatever is attached to registration in the French book.   The only evidence on the subject is express evidence that registration in the French book did not add to the value of a stallion.   The truth of this proposition the trial court recognized and the jury was so instructed.   As to the Percheron Stud Book of America, the plaintiffs insist that the animal was recorded, and that his registration was in all respects perfect. This affirmative proposition is shown by the testimony of John Thompson.   Thompson is an expert witness and entirely disinterested.   And it is shown further by the testimony of Isaiah Dillon and Leo Dillon, and by the original stud books themselves, volume II and IV.   Now, this testimony is unquestionably sufficient to determine that proposition, unless it is controverted by testimony to the contrary.   Now, what contradiction appears in defendants' testimony.   There is no contradiction in the testimony of M. R. K. Biggs. Mr. Biggs' connection with the Percheron Association of America began in the year 1889 or 1890.   He ascertained what the rules of that association were at that time; with those rules he is acquainted; he has no knowledge whatever of any rule prior to 1889.   In that year Mr. Biggs learned that it was necessary, for registration in the Percheron Stud Book of America, for an animal then imported from France to be first recorded in the Percheron Stud Book of France.   As

a matter of general information, Mr. Biggs had knowledge of the fact that the Percheron Stud Book of America was formed in 1876, and that the business of importing horses from France had been in existence for some years even before that association was formed. He also had knowledge of the fact that there was no Percheron Stud Book of France prior to the year 1883, in which year the French Association was formed. It follows, therefore, from Mr. Biggs' testimony, that the registration of animals in America from 1876 to 1883 had been conducted under the auspices of the American Association, under rules which certainly did not require registration in the French Book, as that book had no existence. It was admitted throughout the case that the animal was not recorded in the French book. Consequently, it was incumbent upon the defendants, if relying upon a breach of warranty in regard to the French book, to establish their damages in regard to the French book by evidence directly bearing upon the value of registration therein. This they have absolutely failed to do. Therefore, as to the French book, they were entitled to no instruction authorizing any damage. On the other hand, if they established to the satisfaction of the jury that the animal was not registered in the American book, and that they were damaged thereby (it being asserted by the plaintiffs that the animal was properly registered in the American book), they were bound to establish and particularize the damage growing out of a failure of registry in that book. There is no testimony whatever tending to show damage to the value of the animal on account of any want of record in or on account of any defective record in the American book alone. The defendants' instruction number 15 is erroneous and misleading to the jury. It authorizes the jury to find that the animal was warranted registered in both the

P. S. B. A. and the P. S. B. F., and further authorized them if they found that the horse was not registered in both books or was not registered in either of the books, to bring in a verdict for the defendants upon the counterclaim for the difference of the value of the horse with the full registration and without the full registration.

GEORGE ROBERTSON and ROBERT SHACKELFORD for respondent.

The appellant raises many contentions over the giving and refusing instructions in the case, but after all it resolves itself into the simple proposition: Did the trial court try the case below in substantial conformity with the mandate of this court as set forth in Sharp v. Sturgeon, 66 Mo. App. 191. And if the court below so tried the case then the objections of appellant can not prevail. There is no principle better settled than when a case is passed upon by this court and remanded, and retried in the lower court and again reaches this court, on determination it will adhere to the conclusions of law reached by it in its former decision of the case. Gwin v. Wagoner, 116 Mo. 151; Hayden v. Grillo's Adm'r, 42 Mo. App. 1. In other words the decision of the upper court becomes the law of the case, and can not be questioned so far as that particular case is concerned. The main contention of appellant is founded on the fact that the court permitted the defendant to show by oral evidence occurring at the time the contract was made, what the recitals meant as set forth in the contract and what was understood by them at the time. This contention is not well taken for the reason that such oral explanations are not only permissible by the settled law in this state by a long line of decisions; but settled by the

opinion in this case rendered in 66 Mo. App. when this case was before this court. Also see the following authorities: Ellis v. Harrison, 104 Mo. 270; Welsh v. Edmisson, 46 Mo. App. 282. And while on this point we shall inquire as to what did this court direct as the legal rule in this case, in its decision in 66 Mo. App. In that opinion the court said in speaking of the contract in the case, "Oral evidence of what passed between the parties at the sale, as well as oral evidence of the custom of trade if there was such custom was admissible for the purpose of showing the true meaning and effect of such recitals." The instructions in the case properly presented to the jury the measure of damages which was the difference between what the horse was actually worth, and what he would have been worth if he had been as the plaintiff warranted him to be at the time he was bought by the defendant, and the jury evidently came to the conclusion that as the horse was only worth from $200 to $300 as shown by the evidence, and as the defendant had already paid $600 on the horse, it was more than enough to satisfy the plaintiff, and the jury could well have given defendant a judgment on his counterclaim for damages, but of this plaintiff can not complain, and as the verdict was for the right party this court will not reverse the case even though there may have been error committed, but we claim there was no error such as plaintiff can complain of. Comfort v. Ballingal, 134 Mo. 281.

BIGGS, J.—This is the second appeal in this case (66 Mo. App. 191). In the former opinion the subject-matter of the controversy is fully stated. In order to properly understand the various assignments, it will be necessary for us to make a full statement of the facts as presented at the trial of the case. On the

twenty-eighth of February, 1889, the defendant Sturgeon purchased from plaintiffs, through Dillon Brothers, a Percheron stâllion named Peco. The parties signed a written contract of sale. In describing the horse the contract contained the following: "Dillon Register, 210, N. F. D. H. 1430; P. S. B. A. 1615; P. S. B. F. ——." It is conceded that the words "Dillon Register" refer to a private register of French draft horses which was kept by Dillon Brothers, who were importers of such horses; that the capital letters N. F. D. H. stand for National Register French Draft Horses; that the letters P. S. B. A. stand for Percheron Stud Book of America; that the letters P. S. B. F. stand for Percheron Stud Book of France, and that the number opposite each was intended to represent the number under which Peco was registered in the respective books or registers. The purchase price of the horse was $1,100, for which Sturgeon executed two promissory notes, one for $600 and the other for $500. The defendant Renner signed the notes as surety. The note for $600 was paid. Sturgeon refused to pay the other, upon the ground that in making the sale the plaintiffs, through their agents, Dillon Brothers, warranted that the horse was registered in the Percheron Stud Book of America and in the Percheron Stud Book of France, whereas he was not registered or entitled to be registered in either of them. Thereupon the plaintiffs instituted this suit on the note for $500. Sturgeon set forth in his answer the contract, pleaded the warranty and its breaches, and averred that the horse was worth the amount he agreed to pay for him, if he had been registered as represented, and that without registration in the French and American books he was only worth $200. He asked judgment by way of counterclaim for the difference between the actual value of the horse and the amount which he had already paid. The

plaintiffs replied that the portions of the contract referred to were matters of description merely, and were not intended as warranties.

On the former appeal we ruled that oral evidence of what was said at the time the horse was purchased and of the custom of the trade (if there was such a custom) was admissible for the purpose of showing the meaning of the recitals in the contract. On a retrial evidence as to the conversations between Sturgeon and Dillon Brothers, and the representations made by the latter as to the registration of the horse, were admitted in evidence. The testimony of Sturgeon tended to prove that Dillon Brothers represented and warranted that the horse was registered in all of the books mentioned in the contract, whereas he was not registered in the Percheron Stud Book of France; that he was not properly registered in the Percheron Stud Book of America, nor was he entitled to registration therein, and that his name only appeared in an appendix to the Percheron Stud Book of America, which fact was of no consequence and added nothing to the value of the animal. His evidence also tended to prove that without such registration the horse would have to be handled as a grade horse and would probably be worth $200 or $300. The defendants introduced no evidence of what the horse would have been worth if not registered in the French book only. The theory of the defense at the trial seems to have been that the animal was not registered nor entitled to registration in either book, and in the examination of witnesses on the question of value their attention was directed solely to the value of the horse if not registered at all. * * * Sturgeon also read in evidence the rules of the American Percheron Horse Breeders Association entitling an animal to registration in the Percheron Stud Book of America. The

rules were adopted in 1888, and eligibility to entry was based upon one or more of the following rules, to wit: *First.* "Any stallion or mare previously recorded in the Percheron Stud Book of France. The original certificate of registration must accompany the application in all cases under this rule." *Second.* "Any stallion or mare whose sire and dam are recorded in the Percheron Stud Book of America, the application to be accompanied by the affidavit of the breeder." *Third.* "Stallions or mares, the produce of five top crosses of sires, recorded in the Percheron Stud Book of America, etc."

After the adoption of these rules a book which was designated by the Association as Volume IV of the Percheron Stud Book of America, was published in 1888. This is the book referred to in the bill of sale of the horse.

The evidence offered by the plaintiffs tended to prove these facts: In making the sales the recitals in the contract were intended as matters of description and not of warranty, and that as a matter of fact they made no representation that the horse was registered in the Percheron Stud Book of France. It was conceded that the horse was not registered in the Percheron Stud Book of France, and he could not have been for the reason that there was no such book in existence at the time Peco was imported from France. The horse was imported by Dillon Brothers in 1881, and the Percheron Stud Book of France was not started until 1883.

The present American Percheron Horse Breeders Association was first established in Chicago in 1874, under the name of the Percheron-Norman Horse Breeders of America. The association published its first book in 1878, and entitled it "Vol. I Percheron-Norman Stud Book." Later on a second volume was

published under the same title. In 1884 a third volume was published and it was designated as "Vol. III National Register of Norman Horses." Under the rules in force when these volumes were published any draft horse imported from France was entitled to registration, whether the animal had a pedigree or not.

Previous to 1884 (when the French Association was established) no attention was paid to the pedigree of horses imported from France. Peco was registered in 1884 in the second volume under the number 1615. He was registered without pedigree, and was entitled to registration by reason of his importation. In 1888 the American Association published volume IV and entitled it "Percheron Stud Book of America." The names of all horses which were registered in the earlier volumes and those which were registered after the publication of volume III were carried into volume IV.

In one part of the volume the names of all horses having pedigrees were entered, and in another part which was designated as "the appendix," the names and numbers of horses having no pedigree were entered. As Peco had no pedigree his name and number were placed in the appendix.

The names of over one half of the horses in the book are found in the appendix. The only reason for the separation of the two classes of horses was to get the book into as small a compass as possible. In the registration of horses having pedigrees probably five or six registrations would cover a page of the book, whereas the names of thirty or forty horses without pedigrees could be registered on a single page.

The plaintiff also introduced evidence tending to prove that pedigrees of the horses that were first imported were not obtainable; that a pedigree added nothing to their value, and the fact that the names of such horses appeared in the appendix in volume IV

did not detract from the value of the horses, and did not affect the validity of their registration.

The jury returned a verdict in favor of the defendants on the note and against them on the counterclaim, and judgment was entered in accordance with the verdict. The plaintiffs have appealed and complain of the admission of incompetent and irrelevant testimony and of the action of the court as to the instructions.

VERDICT.

The first assignment of error is that the court committed error in permitting Sturgeon to testify that Dillon Brothers promised to send him the certificates of the registration of the horse in the various books. In so far as this evidence had a tendency to enlarge the obligations of the plaintiffs under the contract it was inadmissible, and at the instance of the plaintiffs the court so instructed the jury. But the testimony was admissible as showing the importance attached to the alleged registrations of the animal, which fact probably had some tendency to prove that the recitals in the contract as to the registrations were intended as warranties. This assignment will therefore be overruled.

On the measure of damages the court at the instance of the plaintiffs gave the following instruction:

"If the jury believe from the evidence that the plaintiff contracted with the defendant, J. W. Sturgeon, that the horse Peco was registered in the Percheron Stud Book of America and also the Percheron Stud Book of France, and further believe that plaintiffs' representation that said animal was registered in both of said books, was false; yet if the jury believe that the horse Peco was actually registered in the Percheron Stud Book of America as number 1615 under the regis-

INSTRUCTIONS.

tration rule of the association in force at the date of Peco's registration, but further believe that said animal was not registered in the French book then the jury are instructed that although they may believe that plaintiffs falsely represented said horse to be registered in the Percheron Stud Book of France, nevertheless there is no evidence in the case showing or tending to show the amount of defendant's damage by reason of the fact that said horse was not registered in the Percheron Stud Book of France, in such case the defendants will be entitled to nominal damages only, and the verdict will be for the plaintiffs for the full amount of the note sued upon with interest."

On the same subject and at the instance of the defendants the court gave the following instruction:

"The court instructs the jury that if you believe from the evidence in the case that defendants by their agents Dillon Brothers represented to defendant Sturgeon at the time he bought said horse, that said horse was registered in the Percheron Stud Book of America and in the Percheron Stud Book of France, and that said Sturgeon relying upon said representations bought said horse, and that said representations *or any part thereof* is false, then the plaintiff's are liable for breach of contract and must answer to defendant Sturgeon in this action for damages; and the measure of damages is the difference between the said horse as represented and as he was without such registration."

The complaint that these instructions are radically inconsistent is well taken. It was conceded by the plaintiff's that Peco had not been registered in the Percheron Stud Book of France, and that he was not entitled to registration therein but as above stated the defendants introduced no evidence that this of itself detracted anything from the value of the horse. Therefore the plaintiffs' instruction properly declared that,

even though the plaintiffs warranted that the horse was registered in the Percheron Stud Book of France, Sturgeon was entitled to only nominal damages, provided the animal was properly registered in the Percheron Stud Book of America.

After reciting the alleged warranties or representations that the horse was registered in the American and French books, the jury is told in the defendants' instruction that if plaintiffs made the representations and "said representations *or any part thereof* are false, "then the measure of plaintiffs' damage was the difference between the said horse as represented and as he was without such registration. It is obvious that these instructions declare different doctrines.. Under the one the defendant is only entitled to nominal damages, if only one of the alleged representations, to wit, that the horse was registered in the Percheron Stud Book of France, proved to be false, while in the other a verdict for substantial damages was authorized if there was a breach of either warranty. The fifteenth instruction given for the defendant is likewise inconsistent with the plaintiffs' fifth instruction. After reciting the alleged warranties as to the registration of the horse in the American and French books, this instruction stated that if Peco "was not registered in said books *or in any part of them*, then your verdict will be in favor of the defendant upon his counterclaim for the difference in value of the horse Peco at the time of such sale without such registration, and the value of such horse if he had been so registered, etc." Besides under the evidence the instruction declares an erroneous rule for the admeasurement of the damages (if any), for as before stated the decreased value of the horse by reason of a partial registration was not shown; hence under the proof the plaintiffs' instruction declared the correct rule.

On the question of *pedigree* the court on motion of plaintiffs' instructed the jury as follows:

"The jury is instructed that in the contract read in evidence, plaintiffs did not agree to furnish defendant with a *pedigree* of the horse Peco, or certificates of his registration, and plaintiffs were not required to do so; and if the jury find from the evidence that said horse Peco was in fact registered with the numbers as stated and set forth in said contract, then your verdict will be for plaintiffs."

"The court instructs the jury that there is no question of pedigree in this case and it makes no difference whether said horse Peco had a known pedigree or not, if said horse was actually registered without *pedigree* under the registration rule in force at the date of his registration."

The thirteenth instruction given for the defendants is as follows:

"The court instructs the jury that if at the time the said Dillon Bros., as agents, sold said horse Peco to defendant Sturgeon, they or either of them represented by the written contract as explained by the acts, words and conduct of the parties at the time to defendant, that said horse was a *pedigreed* animal, and said Sturgeon relying upon said representations bought the same, and that said animal is not pedigreed as represented, then plaintiffs are liable in this action, and it will be your duty to so find."

It is insisted by the plaintiffs that the defendant's instruction is misleading, and that it is inconsistent with theirs. The defendants argue that the words "pedigreed animal" as used in the instruction meant a registered animal; that the words pedigreed and registered have substantially the same meaning. The evidence tended to show a radical difference in the meaning and application of the two words; for instance,

horses belonging to the earlier importation were entitled
to registration whether they had any pedigree or not.
We therefore think that the instruction as worded
might have confused the jury.

The plaintiffs asked and the court refused to give
the following instruction:

"The court instructs the jury that if they find
from the evidence that the horse Peco was in fact im-
ported to America in 1881, and that under
the rules of the association that issued the
Percheron Stud Book of America he was
entitled to be registered in said book because he was so
imported, and he was in fact registered in said book as
number 1615, then it makes no difference whether the
association controlling said Percheron Stud Book of
America, in its publication subsequent to such regis-
tration, listed said horse in the main portion of said
book or in its appendix, and such registration was a
full compliance with the terms of the contract read in
evidence as to his registration in the Percheron Stud
Book of America."

REFUSED instruc-
tions.

This instruction in the form in which it was asked
was properly refused. It will be observed that the
plaintiffs claim that Peco was first registered in the
second volume of a book entitled "The Percheron-
Norman Stud Book." The recital in the bill of sale
states that he was registered in the Percheron Stud
Book of America. If the recital was intended as a
warranty, it not only implied that Peco was registered
in the last named book, but was rightfully entitled to
such registration. The evidence introduced by plain-
tiffs tended to show without special contradiction that
these various books were issued under different names,
but by the same association, viz., the American Perch-
eron, Horse Breeders Association; that the horses
registered in the first three volumes were entitled to

registration in the fourth volume; that Peco was reg-istered in the second volume; that under the rules of the association he was entitled to be registered in the fourth volume; that for convenience merely and as a matter of form his name was placed in a portion of the volume designated as an appendix, and that the fact it so appeared in the book did not affect the validity of his registration. An instruction stating these facts hypothetically would be proper, for if such are the facts the registration of the horse in the appendix was a proper registration of him in the Percheron Stud Book of America within the meaning of the contract of sale.

For the errors pointed out the judgment of the circuit court will be reversed and the cause remanded. Judge BLAND concurs; Judge BOND dissents.