ROYAL E. RUCKER, Respondent, v. D. A. HARRINGTON, Appellant.

Kansas City Court of Appeals, January 16, 1893.

1. **Frauds and Perjuries:** SALES OF REAL ESTATE: CONTENTS OF CONTRACT. Whether an agreement for the sale of real estate be witnessed by a formal contract, or by a memorandum, in either case the paper must, under the statute, contain the whole agreement. And, *held, arguendo,* that the seller or buyer of the land cannot be filled in by parol, nor one piece of property be inserted for another. The Missouri cases are discussed and distinguished.

VOL. 52—31

| | |
|---|---|
| 52 | 481 |
| 53 | 433 |
| 52 | 481 |
| 54 | 383 |
| 55 | 378 |
| 56 | 235 |
| 52 | 481 |
| 60 | 142 |
| 52 | 481 |
| 70 | 142 |
| 52 | 481 |
| 73 | 154 |
| 74 | 594 |
| 52 | 481 |
| 161s | 122 |
| 161s | 123 |
| 52 | 481 |
| 91 | 468 |
| 52 | 481 |
| 94 | ¹616 |

Rucker v. Harrington.

2. ———: ———: SUBSEQUENT ORAL CONTRACT. A contract for the sale of lands cannot be varied by a subsequent oral agreement, as that the buyer agreed to take a less perfect title than that called for in the contract in consideration of an earlier giving possession than originally agreed.

3. ———: ———: SUBSTITUTED PERFORMANCE. There may be an executed performance substituted instead of the performance required in the contract, if it be accepted and accomplished, but a verbal agreement for substituted performance of a written contract for the sale of real estate cannot be enforced for the same reason that an oral contract, or a subsequent oral modification of a written contract, cannot be enforced.

*Appeal from the Jackson Circuit Court.*—HON. JAMES GIBSON, Judge.

REVERSED.

THIS action is for damages for defendant's alleged breach of contract, and is founded on the following written agreement for the sale of lands and a subsequent verbal agreement in relation to the same sale:

"This contract, made and entered into this third day of April, 1890, by and between Royal E. Rucker, of the county of Jackson, state of Missouri, the seller, and D. A. Harrington, of the county of Jackson, state of Missouri, the buyer,

"Witnesseth: The seller has bargained and sold to the buyer the following described real estate situated in the county of Jackson, state of Missouri, to-wit: The northwest quarter of the southwest quarter, and the northeast quarter of the southwest quarter, and fifteen and one-third acres off of the north end of the southeast quarter of the southwest quarter of section twenty-one (21), township forty-eight (48), range thirty-two (32), containing ninety-five and one-third acres. The seller is to retain possession of the farm until January 1, 1891, and for the use thereof is to pay the buyer one-third of the corn cribbed and one-

third of the small grain in the stack, the buyer to have privilege of making such improvement as he wishes that does not interfere with the seller in farming. At and for the price of $4,290, to be paid as follows: $100 at the signing of the contract, the receipt of which is hereby acknowledged by the seller, and which is deposited with Harper and Wilson as part of the consideration of the sale, and the balance whereof is to be payable in the following manner, to-wit: The buyer to assume a note of $1,600 and interest, which is secured by deed of trust on the land, and pay the balance in cash at the time deeds are passed. The seller is to furnish, within ten days from date hereof, a complete abstract of title to said property from government down to date, and such usual certificates as may be required by the buyer as to judgments and mechanics' liens from the various courts in which judgments would be liens thereon, and the buyer to have ten days for the examination thereof.

"The seller also agrees to pay all state, county, municipal and special taxes now a lien on said property, excepting all taxes for the year of 1890 and thereafter, which are to be assumed and paid by the buyer. If upon examination it is found that the seller has a good title in fee to said property, he agrees to execute and deliver to the buyer or order a general warranty deed thereto, properly executed and free and clear of all liens and incumbrances whatsoever, except only such as are to be assumed by the buyer hereunder and concurrently herewith and as a part of the same transaction; the buyer is to pay the balance.

"If the title is found to be defective, the seller agrees to have the defects in it rectified within a reasonable time, which is not to exceed thirty days from the date of which the transfer of the property is to be consummated under this contract; but in case such

defect in the title cannot be cured or remedied within that period, and no extension of time is had between the parties, this contract is to be null and void, and the said sum of $100 deposited as aforesaid is to be returned to the buyer.

"If, though the title be good and the seller has kept his part of the contract, the buyer fail to comply with its requirements on his part within ten days after being furnished with the abstract of title, then the aforesaid deposit of $100 shall be forfeited to the seller, but for this cause this contract shall not cease to be operative as between the parties hereto.

"Time is and shall be the essence of this contract, and the sale and transfer of said property according to the provisions hereof shall be consummated within the time specified above."

On its afterwards being ascertained that plaintiff had not a good marketable or paper title, the following further oral agreement was (as plaintiff charges) made between the parties: "And it was agreed in regard to this defect, between plaintiff and defendant, that in consideration of the plaintiff deducting $300 from the purchase price of said property as agreed on in said contract, and also agreeing to deliver possession of said property to defendant on the first day of November, 1890, instead of the first day of January, 1891, as agreed in said contract, the defendant would waive said defect in the title and accept said title as satisfactory. And thereafter the plaintiff offered to carry out and complete said contract, and deliver to defendant a deed as therein required, and has repeatedly demanded of the defendant that the same be consummated, but the defendant has failed and refused and still refuses to carry out said contract on his part, and has notified plaintiff that he would not carry it out."

The court below found for plaintiff and assessed his damages. Defendant appeals.

*Wash Adams,* for appellant.

(1) The effect of the statute of frauds is to prevent specific enforcement of any verbal agreement affecting the title to land and the allowance of damages for its breach. *Millentryer v. Morrison,* 39 Mo. 71; *Brungirdle v. Heald,* 1 B. & Ald. 727; *Touch v. Strawbridge,* 2 C. B. 814; *Bretain v. Roeseter,* 11 Q. B. Div. 123; *Craig v. Vanpalt,* 3 J. J. Marsh. 489; *Haynes v. Nice,* 100 Mass. 327. (2) A written contract may be varied, waived or discharged by a subsequent parol agreement provided such agreement is not invalid under the statute of frauds, or otherwise. 1 Phillips on Evidence [Ed. 1823] p. 493; Browne on the Statute of Frauds [3 Ed.] sec. 409; Stephens' Digest Law of Evidence, art. 90, p. 163, subdiv. 4. (3) When a written contract is subsequently altered by a verbal agreement, the original written agreement is abandoned except so far as the same constitutes a part of the modified contract. The real contract in such case depends upon the verbal agreement. *Dana v. Hancock,* 30 Vt. 616; *Lanitz v. King,* 93 Mo. 213. No action can be maintained upon an agreement embraced within the provisions of the statute of frauds, unless it is wholly in writing. *Goss v. Nugent,* 2 Nev. & Man. 33, 34; *Harvey v. Graham,* 5 Adol. & Ell. 61–73; *Stead v. Donber,* 10 Adol. & Ell. 57; *Noble v. Wood,* L. R. 1 Exch. 117; *Marshall v. Lynn,* 6 Mees. & W. 109; *Stowell v. Robinson,* 3 Bing. (N. C.) 928; 5 Sutt. 196; *Dana v. Hancock,* 30 Vt. 616; *Parteriche v. Poulet,* 2 Atk. 384; *Emmet v. Dewhurst,* 3 McM. & G. 587; *Mitchell v. Ins. Co.,* 54 Ga. 290; *Mathison v. Wilson,* 87 Ill. 52; *Cook v. Bell,* 18 Mich. 387; *Abell v. Munson,* 18 Mich. 306; *Brown v. Sanborn,*

21 Minn. 402; *Long v. Hartwell*, 5 Vroom, 124; *Huffman v. Hummer*, 3 C. E. Green, 89; *Cravener v. Bowser*, 4 Pa. St. 262; *Brown v. Everhard*, 52 Wis. 205; *Clark v. Russell*, 3 Dallas, 415; *Swain v. Seamens*, 9 Wall. 272; *Emerson v. Slater*, 22 How. 42; *Hickman v. Haynes*, L. R. 10 C. P. 605; *Espy v. Anderson*, 14 Pa. St. 308; *Sanderson v. Graves*, L. R. 10 Exch. 236; *Goucher v. Martin*, 9 Watts, 106; *Dial v. Crain*, 10 Tex. 454; *Schultz v. Bradley*, 57 N. Y. 646; *Hasbrouch v. Tappan*, 15 Johns. 202; *Robson v. Collins*, 7 Ves. 130; *Nurse v. Seymour*, 13 Beav. 254; *Hill v. Blake*, 97 N. Y. 52; Wood on Statute of Frauds, sec. 388, p. 867; *Cummings v. Arnold*, 3 Metc. (Mass.) 489; 1 Phillips on Evidence [Ed. 1823] p. 493; Rice on Evidence [Ed. 1892] p. 1261; *Lippold v. Held*, 58 Mo. 213.

*Ed. G. Taylor*, for respondent.

(1) Waiver by the defendant of a condition of the contract in his favor is not a modification, but a performance of the contract on the part of plaintiff. *Ins. Co. v. Kyle*, 11 Mo. 278; *Russell v. Ins. Co.*, 55 Mo. 585; *Smith v. Haley*, 41 Mo. App. 611, 619; Browne on Statute of Frauds, sec. 425; *Blood v. Hurly*, 15 Me. 61; Bishop on Contracts [Enlarged Ed.] secs. 771, 796; *Barton v. Gray*, 57 Mich. 623; 7 Wait's Actions & Defenses, 429. (2) In this state, the statute of frauds does not require the terms of the contract for the sale of land to be in writing; but, if the note shows only "that A agrees to sell to B a piece of land in fee," the statute is satisfied. *Bean v. Valle*, 22 Mo. 126; *Halsa v. Halsa*, 8 Mo. 303; *Ivory v. Murphy*, 36 Mo. 534; *O'Neil v. Crane*, 67 Mo. 250; *Briggs v. Munchon*, 56 Mo. 467; *Lash v. Parlin*, 78 Mo. 391; *Ellis v. Bray*, 79 Mo. 227; *Rollins v. Claybrook*, 22 Mo. 405. (3) Therefore, even if there was a parol modification

of the contract, the plaintiff suing on the contract as modified would prove it partly by the original and partly by the after parol agreement, the original still remaining as evidence of the fact of a sale having been made, containing the names of the parties and description of the property. *Cummings v. Arnold*, 3 Metc. 486; *Stearns v. Hall*, 9 Cush. 31; Bishop on Contracts [Enlarged Ed.] sec. 771; *Hugley Bros. Ass'n v. Smith*, 18 S. W. Rep. (Tex.) 955.

ELLISON, J.—The question presented by this record is of much importance. It is apparent that the plaintiff's rights are to be measured by the written contract as modified or altered by the subsequent verbal contract; that is, the two contracts form the foundation upon which his claim is built. *Lanitz v. King*, 93 Mo. 513. He cannot stand upon the written contract alone, for his case concedes that he could not comply with it. He cannot stand upon the oral contract (without reference to its validity) unaided by the written contract, for that is but a part of the whole contract and connects itself with the greater part of the written contract. His case then is bottomed on a contract for the sale of lands which is partly written and partly verbal. It is a rule in the common law of evidence that, since all antecedent or contemporaneous propositions or agreements are deemed to be merged into the written contract, no evidence of prior or contemporaneous arrangements, which varies, adds to or takes from the writing, can be received. But the written contract can be varied, added to or subtracted from by *subsequent* agreements. These well-recognized general rules of law are not controverted by counsel. But the question before us involves the proper construction of the statute of frauds and its bearing on the rules mentioned. That statute declares that no action shall be

brought upon any contract for the sale of lands, "unless the agreement upon which the action shall be brought, or some memorandum or note thereof, shall be in writing and signed by the party to be charged therewith or by some other person by him thereto lawfully authorized." If the contract is complete and in writing and no attempt is afterwards made to vary its provisions, there is nothing left for the courts but to enforce those provisions if otherwise lawful, and such is the rule regardless of the statute of frauds. But, where there has been subsequent verbal change or modification of some of the provisions of the completed contract, whether evidence of such change can be heard; or, where only a memorandum of the contract is made, what it shall contain, are questions which have brought about much discussion. The great weight of authority favors the proposition that subsequent verbal changes or modifications are not allowed to affect the original writing. *Goss v. Nugent,* 5 Barn. & Ad. 58; *Harvey v. Graham,* 5 Adol. & Ell. 61; *Marshall v. Lynn,* 6 Mees. & W. 109; *Hickman v. Haynes,* L. R. 10 C. P. 605; *Sanderson v. Graves,* L. R. 10 Exch. 236; *Emerson v. Slater,* 22 How. 42; *Dana v. Hancock,* 30 Vt. 616, and authorities hereinafter mentioned. And this is said to be true without regard to whether the oral agreement relates to those things which, standing apart, would not be affected by the statute of frauds. *Harvey v. Graham,* and *Dana v. Hancock, supra.*

Plaintiff seeks to fortify himself by undertaking to show in substance that a memorandum of the contract need not mention all the agreement between the parties, and that those portions not mentioned may be shown by oral testimony. And that, therefore, if the contract is completely written out in technical form, it may be varied or changed by subsequent oral agreement, without doing violence to the statute, since it

was not necessary, in the first instance, that all the agreement made should have been in the writing. I will examine this position in the light of the reason back of the statute and the authorities construing its terms. The great weight of authority as well as strong reason also maintains that, where there is only a memorandum of the contract, such memorandum must make note of all the agreement had at the time, including the terms. The statute declares that the formal contract itself, or a note or memorandum of such contract, must be in writing. This memorandum must be a memorandum of the contract, that is to say, all of the contract or terms of the agreement, and not of a part of it. Benjamin on Sales, secs. 210, 222; Story on Sales, secs. 269, 271; *Riley v. Farnsworth*, 116 Mass. 223; *Elliott v. Barrett*, 144 Mass. 256; *Oakman v. Rogers*, 120 Mass. 214; *Peltier v. Collins*, 3 Wend. 459; *Barley v. Ogden*, 3 Johns. 419; *Waterman v. Meigs*, 4 Cush. 497; *O'Donnell v. Leeman*, 43 Me. 158; *Grafton v. Cummings*, 99 U. S. 100; *Williams v. Morris*, 95 U. S. 444, 456; *North v. Mendell*, 73 Ga. 400; *Lee v. Hill*, 66 Ind. 474; *Wood v. Davis*, 82 Ill. 313; *Broadman v. Spooner*, 13 Allen, 353.

I ought to state here that the courts in a large number of the states in America hold that the consideration need not be noted down in the memorandum, but they base such holding not on the theory that the memorandum need not note all the essential terms of the agreement as made, but that the consideration is not considered by such courts as a part of the agreement as contemplated by the statute. Perhaps the leading case in the United States of the class here referred to is *Packard v. Richardson*, 17 Mass. 122. Yet in that state, as shown by the foregoing citations, it is held that *all* the agreement made by the parties must appear in the memorandum. And so it is likewise held in all the states

entertaining the foregoing view as to its being unnecessary to state the consideration.

But it is argued that, in Missouri, a looser construction of this statute has obtained from the first. Let us see what there is in this. Judge McGIRK declared in *Bean v. Valle*, 2 Mo. 126, that a note or memorandum is something less than a formal contract in detail, and that if the memorandum only says: "Witness that A agrees to sell to B a piece of land in fee, and A should sign this, I hold the statute is satisfied as to A." The judge, of course, had it in mind that the land should be identified by some sort of description. The point of decision in that case was that it was not necessary to state the consideration, and that is all which is decided. The memorandum of contract put by the learned judge, by way of illustration, may well be made, since we in this state hold with *Packard v. Richardson*, 17 Mass. 122, and other American authorities, that the consideration is not a part of the agreement; for the illustration states a complete contract, as in such contract there is implied that there shall be a warranty deed, made and delivered in a reasonable time, conveying a good marketable title in fee. *Herryford v. Turner*, 67 Mo. 296; *Mastin v. Grimes*, 88 Mo. 490.

The case of *Halsa v. Halsa*, 8 Mo. 303, was where a contract of sale by the general government was assigned without stating the consideration of the assignment, and merely decides that the consideration need not be in the writing. The case of *O'Neil v. Crane*, 67 Mo. 250, was a mercantile transaction for a sale of chattels, and only involves a question of consideration. The cases of *Ellis v. Bray*, 79 Mo. 227, and *Ivory v. Murphy*, 36 Mo. 534, likewise involved only the question of stating the consideration. The case of *Lash v. Parlin*, 78 Mo. 391, has no application to the point

here. The memorandum in that case showed the agreement "exactly as made." The question of the competency of oral testimony to show agency and the surrounding circumstances at the time the contract was made is not disputed anywhere, and is not involved here. Substantially the same remarks will dispose of the case of *Briggs v. Munchon*, 56 Mo. 467. Some expressions in the foregoing cases are general and were perhaps influenced by the thought of a rule of evidence disassociated from the rule under the statute of frauds. That this is probably true can be inferred from some authorities which are cited in these cases. Thus, the cases of *Rollins v. Claybrook*, 22 Mo. 405, and *Moss v. Greene*, 41 Mo. 389, are cited, when neither of them arose under the statute. In the former earnest money was paid, thus placing the case outside the statute; and the latter was an ordinary contract in writing upon which the statute has no bearing. These cases only refer to the common-law rule of evidence which allows parol testimony to aid a written contract which shows upon its face that it does not contain all of the agreement made by the parties. They have no relation whatever to the statute of frauds. Additional terms to an apparently incomplete contract may, as hereinbefore stated, under the common law be shown by parol, for under the common law it was not necessary that the contract should be in writing; while under the statute the contract must be witnessed by writing. The distinction is plain.

So, I assume that it could not have been meant by any of the general remarks in the foregoing Missouri cases that you could aid the writing by parol testimony of things omitted which are *essential*, under the statute, to be put in writing.

For instance, it is essential to put in the writing that, whereby the seller and buyer may be ascertained

(Story on Sales, sec. 266), and also a description, or at least data, whereby the property may be identified, and oral testimony would not be permitted to fill in the land or to supply a buyer or seller. Nor, for the same reason, as we shall presently see, could oral testimony be allowed to subsequently change or alter anything which was put in the written contract or memorandum which was essential, under the statute, to be therein incorporated. For instance, if certain lands were described, it would not be permissible to show that afterwards other and different lands were verbally agreed to be inserted in place of those described. If these things can be done, it must be apparent that the statute enacted for the declared and historically notorious purpose of preventing fraud and perjury is a sham. While I use the foregoing instances as illustrations, I do so merely for illustration, not that they are the only essentials, for, as before stated, *all* (at least all of substance) of the terms of the agreement are essentials to the memorandum of that agreement and must be noted in writing. To make a memorandum of an agreement, as before stated, is not to make a memorandum of a part of an agreement. It may be altogether informal; it may include technical terms requiring parol explanation, and in commercial matters, as stated by one of the English cases above cited, it may consist of a sort of mercantile short-hand, yet it must show the agreement. Of course things may be implied to aid a memorandum just as they would to a formal contract; for instance, if no time of delivery be agreed upon and, therefore, not appearing in the memorandum, a reasonable time would be implied. The memorandum may be exceedingly limited, as in the illustration given in *Bean v. Valle, supra,* provided it correspond with the agreement and contains the elements of a contract.

We are, however, not left to stand alone on the foregoing analysis of the decisions of our supreme court. The view of the law which we have taken in the course of this opinion is amply supported in the case of *Smith v. Shell*, 82 Mo. 215, wherein it is held that the memorandum must show all that was agreed upon except consideration. That case does not refer to the former decisions of the same court, to which we have referred; but the face of the opinion, as delivered by HENRY, J., shows that it was thoroughly considered. While that case is stated by the editors of the American & English Encyclopedia of Law to have overruled the cases we have discussed, yet it is quite probable that the distinguished judge and those of his associates who concurred with him, regarded (as we have) only the points of decision in those cases, disconnected from the general remarks therein made. So regarded, the cases are not in conflict. However this may be, the latter case supports the construction which we have given the statute. That view is so well fortified in reason and authority that we advance it with confidence. It is not only upheld in the cases to which we have referred, and which will be found in the brief of defendant's counsel, but by many others which an examination of the question has thrown in our way, as well as by such eminent authors as Story in his work on sales, sections 257, *et seq.*, 265, 266, 269, 270; Benjamin on Sales, 201–213, 234; Browne on Statute of Frauds; 2 Reed on Statute of Frauds, section. 454; 2 Rice on Evidence, 1261; 1 Phillips on Evidence, 493.

Having, therefore, established or shown, that whether the agreement be witnessed by a formal contract, or only a memorandum, in either case the paper must, under the statute, contain the whole agreement, we will now consider whether such memorandum can be varied by a subsequent oral contract. It seems to me

that such question is practically answered in the foregoing consideration of what it is necessary for the memorandum to contain. It is true that at common law, while you could not vary the terms of a written contract by prior or contemporaneous agreements or stipulations, yet you might do so, on sufficient consideration, by *subsequent* oral agreement. But in such case the original agreement, as has been already stated, need not have been in writing; the rule is one of evidence, and there being no inhibition against making the whole contract orally, there can be no reason to prevent subsequent oral change; but in a case under the statute an entire different phase is presented. It should be apparent that if the original contract must be in writing, to be capable of enforcement, any subsequent change therein must likewise be in writing. It is difficult to find argument to sustain this proposition, simply from the fact that it is self-evident. It will not do to say that the statute only has reference to or prohibits an entire new deal or change of contract, for we have already seen that the entire contract, substantially as made, is within the terms of the statute. And, as applied to this case, it must be admitted that the original contract could never have been enforced by plaintiff, since he did not have the title he therein agreed to convey. He is thus compelled to sustain his cause of action by the subsequent oral contract, the subject-matter of which oral contract is found in the original writing, while the *contract itself* is found in the subsequent oral agreement, connecting itself with the writing for a part of its terms. To enforce such a contract would be to practically nullify the statute.

II.   Plaintiff, however, insists that the oral agreement in the case at bar was not a change of the contract, but was a substituted performance, and that performance

of the contract, as distinguished from the contract itself, is not within the statute. I am quite willing to concede that there may be a substituted performance, *performed—executed.* As, if the contract should call for a warranty deed to be delivered on the first day of January, and a quitclaim deed should be delivered on the fifteenth of January *and accepted* in discharge of the contract. So, the contract may be discharged by accord and satisfaction, and the like. But this is a wholly different consideration from matters executory.

Plaintiff's contention is supported by only one case to which our attention has been called, *Cummings v. Arnold*, 3 Metc. 486. That case, as decided, is analogous, in principle, to plaintiff's case here; but the reasoning of the judge therein is not so. He relies principally on the case of *Cuff v. Penn*, 1 M. & S. 21. He declares that the principle upon which that case rests "is, in our judgment, more satisfactory, and better adapted to the administration of justice in this and similar cases." In our view, the *Cummings case* does not touch the principle of *Cuff v. Penn*, and it can find no support whatever from the latter. In *Cuff v. Penn* there was a written contract for the delivery of bacon to Penn in stated amounts, and at stated times from April 20 to August 10, at stated prices. After several deliveries had been accepted, the defendant on the second day of July *"called on the plaintiffs and told them, as the sale of bacon was very dull, he hoped that they would not press it on him, and they assured him that they would not."* Plaintiffs, having complied with this request for some time, at length informed the defendant that he had exceeded a reasonable time, and requested him to name a time for delivery. Defendant declined, observing that sales were still very dull. Similar requests were made to defendant to say when he would take the bacon, without effect. Finally, he

repudiated the contract, and when sued objected in defense that, if the oral agreement was to be taken as making a new contract, it was not good under the statute of frauds. Lord ELLENBOROUGH very properly stated the statute of frauds *not to be applicable at all,* since the provisions of the statute were complied with, in that the contract was in writing, and had been partly performed. But even the remaining part of the opinion, concerning the variations of a written contract, under the rules of evidence, does not aid the *Cummings case;* for the substituted delivery was had at the defendant's special request, and solely for his accommodation, the plaintiff never being in default. The just principle of estoppel *in pais* finds a place in such state of case.

But, in addition to this, the view of that case, as given in the *Cummings case,* has been overruled in England. *Stead v. Dawber,* 2 P. & D. 447; *Marshall v. Lynn,* 6 M. & W. 109. It is, however, worthy of remark, as quite singular, that the courts in the cases last cited should have thought *Cuff v. Penn* to be a decision on the statute of frauds and, therefore, necessary to be overruled, when, as before remarked, it does not discuss or construe the statute. And, if it did, the case was nothing more than a voluntary extension of time for delivery made at the request of the defendant. The case did not show a *contract* to change or enlarge performance, but merely forbearance at request and for the accommodation of the opposite party. In which instance he should, of course, be estopped from setting up a voluntary compliance or acquiescence in his own request. Such is evidently the view taken in the late cases of *Hickman v. Haynes,* L. R. 10 C. B. 598; *Ogle v. Lord Vane,* 2 Q. B. 275; *Tyers v. Rosedale,* L. R. 10 Ex. 195, though the opinions do not refer, in terms, to *Cuff v. Penn.* It is, therefore, it seems to me,

quite clear that when the Massachusetts court in the *Cummings case* took the case of *Cuff v. Penn* for its base it builded on sand. The learned judge in the *Cummings case* dwells upon substituted performance as distinguished from the contract, and as a thing apart. But he seems not to distinguish between substituted performance, accomplished—accepted, and substituted performance, unaccomplished and unaccepted—resting merely, on agreement. And so we conceive plaintiff's counsel, in the case at bar, has fallen into the same error. An error he would doubtless have avoided but for that case. That case, so far as I have been able to learn from the research of counsel and my own investigation is not supported by any adjudications before or since; it is criticised in 22 Howard, 42, *supra*. If an unexecuted verbal agreement for substituted performance of a written contract for the sale of lands may be enforced, the statute of frauds is of no further practical importance. What is substituted performance? It is substituting something else in the place of what was agreed to be done in the writing. And, if an unexecuted oral agreement to do this is binding, other land, on other conditions, terms and stipulations, may be orally agreed to be substituted in performance or satisfaction of the writing. This would be juggling with the statute. The Massachusetts court, after quoting from Lord ELLENBOROUGH in *Cuff v. Penn*, that: "The principal design of the statute of frauds was that parties should not have imposed upon them burdensome contracts which they never made, and be fixed with goods which they never contemplated to purchase," proceeds to say: "The statute, therefore, requires a memorandum of the bargain to be in writing, that it may be made certain, but it does not undertake to regulate its performance. It does not say that such

contract shall not be varied by a subsequent oral agreement for a substituted performance." Now it is very true, as stated in the quotation from *Cuff v. Penn*, that one of the main designs of the statute was to prevent burdensome fabricated contracts from being imposed upon parties. But a contract is only burdensome because of the consequence of performance flowing from it. *Per se* the contract is harmless. It is the performance that does the hurt. It is, therefore, at least, equally proper to say that the principal design of the statute was to protect parties from the *performance* of burdensome contracts which they never made. Therefore, if you may enforce an oral agreement for a substituted performance of a written agreement, you apply the statute to the shadow and withhold it from the substance. Such application of the statute only makes it necessary that parties have *a* contract in writing; then, under the guise of performance, *the* contract enforced is shown by parol. The defrauder and the perjurer, at whom this statute of frauds and perjuries was striking, has only to prevail upon his unsuspecting contractee to enter into writing on terms never so favorable to the victim, and then, when it comes to performance, he calls to his aid the convenient rule permitting an oral agreement for the performance of something else to be shown. Thus a clear field is given to his elastic conscience, his intrigue and subornation. Our judgment is against this. Its allowance is an utter defeat of the statute.

The judgment of the trial court will be reversed. All concur.