DARNELL et al., Respondents, v. LAFFERTY, Appellant.

St. Louis Court of Appeals, June 1, 1905.

1. APPELLATE PRACTICE: Questions Determined in Appellant's Favor. A ruling of the trial court in favor of the appellant is not reviewable in the appellate court.

2. JUSTICES OF THE PEACE: Pleading. A statement of a cause of action filed before a justice of the peace, inartistically drawn, which sets out a contract as the basis of the action, is sufficient if the contract is a binding one.

3. STATUTE OF FRAUDS: Parol Evidence: Incomplete Contract. The rule that parol evidence may be admitted to supply omitted portions of an incomplete written contract, does not apply to contracts falling within the statute of frauds.

4. ———: Sale of Chattels: Essentials of Contract. A contract required by the terms of section 3419, Revised Statutes of 1899, for the sale of chattels of value in excess of thirty dollars, must contain the essential terms of a complete contract, to-wit: first, the parties; second, the subject-matter; third, the price; fourth, the time, place and manner of payment; fifth, the time and place of delivery, if such delivery was agreed upon.

5. ———: ———: Delivery. A memorandum for the sale of cattle which provided that they were "to be weighed at Curryville on August 11. 1903. with 3 per cent off at 3 1-3 cents per pound," sufficiently shows the time and place of delivery to meet the requirements of the statute.

6. ——: ——. The statute does not require the memorandum of a contract for the sale of goods to stipulate the time and place of delivery, for if the time and place are not agreed upon, the contract will be construed as providing for delivery within a reasonable time at the customary place.

7. ——: ——: **Parties.** A contract, required by the statute of frauds to be in writing, sufficiently meets the requirement as to parties when it is executed by an agent of one of the parties in his own name, and parol evidence to show the agency is not in conflict with the statute.

8. ——: ——: **Subject-Matter: Parol Evidence.** Parol evidence is admissible to show the circumstances surrounding the execution of a contract required by the statute of frauds to be in writing and identify the subject-matter of the contract.

9. ——: ——: **Description of Property.** A contract for the sale of cattle of value in excess of thirty dollars, which describes them as "ten head of cows and heifers," without designating how many cows and how many heifers, is sufficient under the statute of frauds, because parol evidence may be introduced to identify the subject-matter of the contract.

Appeal from Pike Circuit Court.—*Hon. David H. Eby,* Judge.

Judgment in the trial court in favor of the defendant and a motion for a new trial filed by the plaintiff was sustained. The appeal is from the order granting a new trial.

AFFIRMED.

*Ball & Sparrow* for appellant.

(1) The court committed error when it sustained plaintiffs' motion for a new trial, for the reason that the petition or statement filed by plaintiffs in the justice court stated no cause of action, under the statute of frauds. Weil v. Willard, 55 Mo. App. 376; Rucker v. Harrington, 52 Mo. App. 481; Carrick v. Mincke, 60 Mo. App. 140; Hill v. Coal & Mining Co., 119 Mo. 30, 24 S. W. 223; Scarrett v. M. E. church, 7 Mo. App. 174; Schroeder v. Taffe, 11 Mo. App. 267; Boyd v. Paul, 125

Mo. 9, 28 S. W. 171; R. S. 1899, sec. 3419; Smith v. Shell, 82 Mo. 215. (2) "The rule that where a written contract shows on it is incomplete, the omitted parts may be supplied by parol evidence does not apply to contracts which the statute of frauds requires to be in writing." Ringer v. Holtsclaw, 112 Mo. 519, 20 S. W. 800.

*J. O. Barrow* and *J. D. Hostetter* for respondents.

Any statement which apprises the defendant of the claim of the plaintiff has been held sufficient by an unbroken line of decisions. But the argument of appellant's counsel is, that because the contract was made between defendant and F. L. Darnell, and it is alleged in the petition that J. W. Lewellyn was the real owner of the cattle and that the contract was made by Darnell and in his (Darnell's) name, and that he was agent and trustee for Lewellyn in the making of such contract, therefore proof cannot be given of such facts because it is such a contract as the law requires to be in writing. In other words their contention is that we cannot be permitted to show that Darnell made the contract as agent for Lewellyn. In this they are in error. Kelly v. Thuey, 143 Mo. 438, 45 S. W. 300; Randolph v. Wheeler, 81 S. W. (Mo.) 419; Pomeroy on Cont. 89, 128.

## STATEMENT.

Plaintiffs instituted their suit before a justice of the peace in Pike county, praying judgment in damages against defendant on account of defendant's non-performance of the contract sued on. As the point in decision here is the sufficiency of the petition and the contract declared on under the Statute of Frauds, we will set out the petition or statement filed before the justice in full, omitting the caption:

"Plaintiffs for their cause of action against the de-

fendant say that the defendant entered into a contract with˙ F. L. Darnell, one of the plaintiffs in this case, in writing for the purchase of ten head of cows and heifers, which contract is in words and figures as follows, to-wit:

.'' 'Vandalia, Mo., June 11, 1903.

'' 'This is to certify that I, the undersigned, have this day bought of F. L. Darnell ten head of cows and heifers to be weighed at Curryville, Mo., on August 11, 1903, with three per cent off at three and one-half cents per pound.

(Signed) '' 'MARTIN LAFFERTY.'

"Plaintiffs say that said contract was delivered to said F. L. Darnell and accepted by him and that he at all times stood ready and willing to deliver the cattle referred to in said contract to the defendant and caused them to be weighed at the time and place therein stated, but plaintiffs say that on August 11, 1903, the defendant made request that the plaintiff, Darnell, keep the cattle, mentioned in the contract until the first of September and that plaintiff, F. L. Darnell, was still ready and willing to deliver said cattle to defendant and caused them to be weighed at Curryville, Missouri, on September 1, as requested by defendant, although the said plaintiff, F. L. Darnell, at no time agreed that the time of delivery should be extended until September 1, but requested a payment of two hundred dollars down on said cattle as a condition for agreeing to such extension of time, but the defendant failed to pay said sum and that the plaintiff was under no legal obligation to extend the time.

"Plaintiffs further state that J. W. Lewellyn was at the time of the making of said contract the owner of the cattle mentioned therein and that his co-plaintiff, F. L. Darnell, was acting as his agent in the care and management and sale of said cattle and was his trustee for that purpose and that said contract so entered into between

defendant and F. L. Darnell was entered into by said
F. L. Darnell for and on behalf of his co-plaintiff, J. W.
Lewellyn.

"Plaintiffs say that said defendant, Martin Laffer-
ty, has wholly failed and refused to keep the terms and
conditions and covenants of said contract so executed
and signed by him and has declined and refused and fail-
ed to receive the cattle mentioned therein either on Aug-
ust 11, 1903, or on September 1, 1903, or at any other
date and has failed and refused to pay the purchase price
for same at any other time.

"Plaintiffs say that said cattle when weighed at
Curryville, Missouri, on September 1, 1903, weighed
10,580 pounds and with three per cent off at three and
one-half cents per pound, the purchase price for the
same amounted to $359.19.

"Plaintiffs say that by reason of the failure and re-
fusal of the defendant to comply with and live up to the
terms of his said contract, they have sustained damages
in the sum of two hundred dollars in this, that the
reasonable market value of the cattle at the time and
place of delivery had declined to the amount of two hun-
dred dollars under the contract price and plaintiffs
have been put to expense and inconvenience in bringing
said cattle to Curryville, Mo., to be weighed and by
reason of the premises, plaintiffs state that defendant
is indebted to them in said sum of two hundred dollars.
by reason of his failure to comply with and carry out
the terms of his contract.

"Wherefore plaintiff prays judgment against de-
fendant for said sum of two hundred dollars ($200) to-
gether with interest and costs of suit."

The Statute of Frauds was interposed as a defense.
Plaintiffs recovered judgment before the justice. The
defendant appealed to the circuit court of Pike county.
At the return term of the appeal in the circuit court, the
cause was continued; at the second succeeding term,
after the appeal had been lodged and on the circuit

court's docket, plaintiffs filed their motion for an affirmance of the judgment of the justice, for the reason that no notice of the appeal had been given as required by statute and that they had done nothing amounting to a waiver thereof. This motion was overruled by the court and exceptions saved. On this motion the court heard evidence and examined its records which were introduced. The court possibly found some of the record against plaintiffs on this hearing. After the ruling on said motion, plaintiffs filed a motion to correct the record, which they understood the court had found against them. This motion the court likewise overruled. Plaintiffs excepted. In due course the cause came on for trial before a jury.

The record discloses that both sides made their opening statements and "whereupon plaintiffs proceeded to introduce evidence to sustain their cause of action, but upon the objection upon the part of the defendant to the reception of any evidence under the statement of the plaintiffs filed in the cause, all evidence was excluded by the court. To the action of the court plaintiffs then and there excepted. Whereupon the court directed the jury to return a verdict for the defendant, which was done." Plaintiffs filed a motion for a new trial in due time. This motion was by the court sustained. The defendant excepted to the action of the court in sustaining plaintiffs' said motion for a new trial and brings the cause here by appeal.

Appellant complains of the action of the trial court in sustaining the motion for a new trial. He also discusses in his brief the action of the court in overruling plaintiffs' (respondents') motion to affirm the judgment and to correct the record, both of which motions were ruled in the appellant's favor in the court below.

NORTONI, J. (after stating the facts).—The action of the circuit court in overruling the motion to affirm judgment of the justice for want of notice of ap-

peal and the action of the court in overruling the motion to correct the record in the court below, are not reviewable here on appellant's appeal, both of those motions having been determined in appellant's favor, and the respondents not appealing therefrom, the action of the trial court is not reviewable here at this time. It is unnecessary to cite authorities on this proposition.

Section 3852 of the Revised Statutes of 1899 provides that "no formal pleadings upon the part of either plaintiff or defendant shall be required in a justice's court." Under this provision this court and the Supreme Court have repeatedly held that a statement of a cause of action and account filed before a justice of the peace shall be sufficient to advise the opposite party of what he is charged and to bar another action for the same subject-matter, and this will suffice. Beyond this no formal precision is required. [Doggett v. Blanks, 70 Mo. 499; Dahlgreen v. Yocum, 44 Mo. App. 277; Leas v. Pac. Express Co., 45 Mo. App. 598; Bauer v. Barnett, 46 Mo. App. 654; Haynes v. R. R., 54 Mo. 582; Wilkinson v. Ins. Co., 54 Mo. App. 661; Kansas City v. Johnson, 78 Mo. 661; Butts v. Phelps, 90 Mo. 670, 3 S. W. 218; Weese v. Brown, 102 Mo. 299, 14 S. W. 945; Polhans v. R. R. 115 Mo. 535, 22 S. W. 478.] The statement filed before the justice is certainly sufficient unless the contract or memorandum set out therein is insufficient to take the case out of the operation of the statute of frauds and perjuries. This is a more difficult problem to solve.

Appellant contends that the written contract or memorandum of sale set out in the petition is insufficient under section 3419 of our statutes to take the case out of the operation of said statute and for that reason plaintiffs cannot recover thereon. The general rule is that the memorandum must contain the essential terms of the contract actually completed expressed with such a degree of certainty that it may be understood without recourse to parol evidence to show the intention of the

parties. [Browne, Statute of Frauds (5 Ed.), sec. 371; Ringer v. Holtzclaw, 112 Mo. 519, 20 S. W. 800; 2 Kent's Commentaries (14 Ed.), sec. 511; Kelley v. Thuey, 143 Mo. 422; 45 S. W. 300; Benjamin, Sales, sec. 250; Boyd v. Paul, 125 Mo. 9; 28 S. W. 171; Smith v. Schell, 82 Mo. 215; Springer v. Kleinsorge, 83 Mo. 152; Rucker v. Harrington, 52 Mo. App. 481; 8 Am. & Eng. Ency. Law (2 Ed.), 721, 726; Story, Sales (4 Ed.), sec. 269, 271; Reed, Stat. Frauds, sec. 392; Wood, Stat. Frauds, secs. 345, 270.]

In Rucker v. Harrington (52 Mo. App. 489) Judge ELLISON has well said: "This memorandum must be a memorandum of the contract. That is to say, all of the contract or terms of the agreement and not a part of it." In O'Neil v. Crain, 67 Mo. 250, our Supreme Court said: "Where a written memorandum of a contract does not purport to be a complete expression of the entire contract or a part of it only is reduced to writing, the matter thus omitted may be supplied by parol. This case was quoted approvingly by the same court in Lash v. Parlin, 78 Mo. 91; also by this court in Armsby v. Eckerly, 42 Mo. App. 299. In Ringer v. Holtzclaw, 112 Mo. supra, the Supreme Court, speaking through GANTT, P. J., cited O'Neil v. Crain and Lash v. Parlin, and pointed out that the doctrine therein announced arose no doubt from the fact that at common law before the statute of frauds was enacted, a contract or agreement that would not fall within the ban of the statute was not then within the inhibition of the law, and that parol evidence might be heard to supply patent defects therein because the oral contract was good without the writing, and that the court had failed to note this distinction in those opinions and said: "We fully concur in the statement of the ruling made in those cases which apply to a case *not falling within the statute.* But as to a case, the subject-matter of which is within the statute, we think such a rule must inevitably become subversive of a plain stat-

113 app—19

ute and it is our province to uphold the statutes and not to nullify them." In Kelly v. Thuey, 143 Mo. 422, the court, speaking through Judge SHERWOOD, said: "The memorandum being required to be complete in and of itself, parol evidence cannot be admitted to *piece out* the incomplete writing and make it a complete instrument. At one time in this court the heresy was announced that parol testimony was admissible for the purpose indicated. [O'Neil v. Crain, 67 Mo. 250.] The least erroneous adjudication on this subject is found in Ellis v. Bray, 79 Mo. 227; but the contract and correct ruling was declared in Ringer v. Holtzclaw, 112 Mo. 519, 20 S. W. 800, and followed in Boyd v. Paul, 125 Mo. 9, 28 S. W. 171." So, upon an examination of the authorities in this State, we find that notwithstanding the erroneous doctrine announced in those cases by the Supreme Court, as well as in Armsby v. Eckerly, 42 Mo. App. supra, by this court, which followed O'Neil v. Crain and Lash v. Parlin, the correct rule is that the writing must contain the essential terms of the completed contract, expressed with such a degree of certainty that it may be understood without recourse to parol to ascertain what the parties intended. It becomes necessary then to examine and ascertain what are the essential terms of this contract before we can pass upon the question of whether the memorandum is sufficient to assert itself without parol evidence.

In the case at bar the essentials of the contract are: first, the parties; second, the subject-matter; third, the price; fourth, the time, place and manner of payment; fifth, the time and place of delivery, if such delivery was agreed upon. The memorandum says the cattle were "to be weighed at Curryville, on August 11, 1903, with three per cent off at three and one-half cents per pound." This certainly shows the time and place of delivery, to-wit; Curryville, August 11, 1903. Why should the respondents be required to drive the ten head of cattle to Curryville and weigh them on August 11, 1903,

and then after weighing, figure off three per cent of the gross weight in order to ascertain the net amount due thereon at three and one-half cents per pound, unless, after all of this he was to have settlement then and there for the amount due, and upon such settlement, of course, part with the ownership and possession of the cattle. Contracts are to be construed with reference to the well-known customs of the country pertaining thereto, nothing to the contrary appearing. And, it is a matter of common knowledge that cattle buyers upon weighing cattle in the counties of this State, figure off the "drift" agreed upon and give their checks for the amount due after ascertaining what the amount is with the per cent figured off. If there was a contract made as to the time and place of delivery, then that portion of the memorandum above quoted is sufficient to cover it. If there was no such contract made between the parties, the transaction cannot fail on that account as time and place are not required to be incorporated in the memorandum unless it is agreed upon. "The memorandum need not stipulate any time or place for the delivery of goods sold, or for the performance of any other contract in the absence of such stipulation in the contract." [Brown, Stat. Frauds (5 Ed.), sec. 384.] When time and place are not agreed upon the memorandum will be construed as providing for delivery within a reasonable time at the customary place. This question has been expressly decided in Missouri by both the Supreme Court and this court. [Smith v. Schell, 82 Mo. 215; Dunn v. McClintock, 64 Mo. App. 193.]

The price was three and one-half cents per pound, fixed by the contract. Nothing to the contrary appearing, it was to be paid in cash at the time and place of delivery.

The parties. Appellant contends with much force that the petition on its face shows that F. L. Darnell, whose name is mentioned in the contract as having sold the cattle to the appellant, was not the owner of the cat-

tle; that his co-plaintiff, J. W. Lewellyn, was the real owner of said cattle and the real party in interest and that said F. L. Darnell was the agent for Lewellyn and acted for him therein; that these facts do not appear in the memorandum, hence, it is necessary, in order to enforce the memorandum, to resort to parol evidence to show this agency. In other words, to show how the respondent Lewellyn, whose name is not mentioned in the contract, became a party to the transaction at all and what interest he had therein. On this proposition the law is well settled. The acts of an agent within the scope of his authority are always binding upon his principal and it is wholly immaterial to the party dealing with the agent, the principal being bound thereby, that his dealing is had with the agent and not with the principal in person. The principal being bound by the contract of his agent, the other contracting party has no reason to complain, nor is there any ground upon which he can complain. So it is that under the Statute of Frauds Mr. Pomeroy, in his work on Contracts, lays down the rule: "That when an agreement is executed by an agent in his own name, he appearing to be the contracting party, *the requisite as to parties* is complied with. The principal may maintain a suit to enforce the contract and it is immaterial whether the principal is actually known during the transaction, or whether the other party supposed he was dealing with the agent personally, entirely on his own behalf." [Pomeroy, Contracts, sec. 89.] This question has been squarely decided in this State in Randolph v. Wheeler, 81 S. W. 419; Kelley v. Thuey, 143 Mo. 422; Bank of Odessa v. Jennings, 18 Mo. App. 651; Briggs v. Munchon, 56 Mo. 473. "Under the same circumstances it is now the rule that a suit may be maintained and the contract enforced against the principal, even though he is undisclosed and unknown to the other party at the time of entering into the agreement, provided, of course, it was actually made on his behalf." [Pomeroy, Contracts, sec. 89.] Our Supreme Court has re-

cently said: "It is very familiar learning that the agent may enter into a contract for the purchase of land for an undisclosed principal and the principal may maintain a suit in his own name and enforce the contract, it being wholly immaterial whether the principal is known or unknown during the transaction, or whether the party supposed he was dealing with the agent personally and on his own behalf." [Kelly v. Thuey, 143 Mo. loc. cit. 438; Randolph v. Wheeler, 81 S. W. 419; Fry, Specific Performance (3 Ed.), secs. 238, 239, 240; Wood, Stat. Frauds, sec. 400; Mantz v. Maguire, 53 Mo. App. 136.] Under this rule had Lewellyn refused to deliver the cattle, Lafferty could have maintained his suit on the contract against Lewellyn, the undisclosed principal and would have been permitted to show by parol evidence that Darnell was acting as agent for Lewellyn at the time the contract was made. There is no merit in this contention of the appellant. It is always competent to prove the agency by parol in contracts of this kind under the Statute of Frauds. The competency in this regard does not arise as an exception to the rule that the memorandum must contain the essential terms of the contract and cannot be supplied and pieced out by parol—the parties being regarded as one of the essentials —but is in strict conformity therewith. The essential as to parties, is treated as complied with, when the contract is made by an agent even though made in his own name on behalf of an undisclosed principal, because of the well founded principle arising out of the law of agency, that an agent acting within the scope of his authority, can bind his principal as effectually as the principal can bind himself, and no right of the other contracting party can possibly be infringed because he contracted with the agent and not with the principal in person. It is wholly immaterial in law if the contracting party obligated himself for a sufficient consideration to do or not to do a given act, whether he be required to perform to the agent with whom he contracted,

or to the principal about whom he knew nothing at the time of the contract. Therefore, it is permissible to show by parol that the agent was acting for the principal. "Although parol evidence is not admissible to show which of the parties is the vendor and which the vendee, it is admissible to show that one is merely an agent and to prove who is his principal." [8 Am. & Eng. Ency. Law, 724; Benjamin, Sales, sec. 219; Wharton, Agency and Agents, sec. 403, 404.]

Appellant contends the memorandum is insufficient in that it fails to specify how many cows and how many heifers each, the color, grade, how marked or branded, or otherwise identify the property. It will be observed that the description of the subject-matter in the memorandum is "ten head of cows and heifers." This brings us to the consideration of the question as to what degree of precision in description of the subject-matter is required in sales of personalty under the Statute of Frauds. The question is somewhat difficult of solution. Appellant cites a number of cases. We have examined each with care and find that Garrick v. Mincke, 60 Mo. App. 140, holds that a memorandum must designate a vendee in some appropriate manner. In Weil v. Willard, 55 Mo. App. 376, the point in decision was what was a sufficient description of land under the statute. The same point was in decision in Scarrit v. St. John's, etc., Church, 7 Mo. App. 174, and in Schroeder v. Taffe, 11 Mo. App. 267; While in Hill v. Rich Hill Mining Co., 119 Mo. 9, 24 S. W. 223, it was the specific performance of a contract regarding the sale of real estate. Boyd v. Paul, 125 Mo. 9, was a case involving the sufficiency of a writing pertaining to the assignment of a lease. Rucker v. Harrington, 53 Mo. App. 481, is to the effect that a subsequent oral agreement cannot be made to vary a written contract for the sale of land properly within the statute. Smith v. Schell, 82 Mo. 215, holds that it is not essential to include time and place of delivery unless they are agreed upon, as the law will construe a reason-

able time and at the vendor's customary place of delivery. It will be readily seen that none of these cases, which are all that have been called to our attention by the appellant on this point, can aid us much in discovering the true rule in the matter under investigation. The books abound in cases on the question of what is a sufficient description of land. The rule in this State in such cases is stated by our Supreme Court in a recent case as follows: "While there is much conflict among the authorities as to what is a sufficient description of property in a memorandum or contract of sale in order that it may be enforced by the purchaser, the rule to be deduced therefrom is that the land need not be fully and actually described in the paper so as to be identified from a mere reading of the paper, but the writing must afford the means whereby the identification may be made perfect and certain by parol evidence." [Smith v. Wilson, 160 Mo. 657, 61 S. W. 597; Black v. Crowther, 74 Mo. App. 480.] Diligent search fails to disclose a single Missouri case where the point in decision is the sufficiency of description of the subject-matter in a memorandum or contract for the sale of personalty under the statute of frauds. The text-writers on this subject lay down the following rule: "It must, of course, appear from the memorandum, what is the subject-matter, of the defendant's engagement. Property which is purported to be bargained for, must be so described that it may be identified; . . . but the subject-matter may in any case be identified by reference to an external standard and need not be in terms explained." [Brown, Stat. of Frauds, sec. 385.] "It is not necessary that the agreement should contain a very precise description of the property to be sold, as parol evidence is admissible to identify it, where the memorandum or note contains sufficient data to apply the description to the subject-matter by the aid of such evidence, without requiring any aid from such evidence as to the in-

tention of the person sought to be charged, where he owns other property to which the writing might apply." [Wood, Stat. of Frauds, sec. 353.] "The identification must be, it has been said, without recourse to oral evidence; but this broad statement needs to be qualified by the distinction that 'where a sufficient description is given, parol evidence must be resorted to in order to fit the description to the thing; but where an insufficient description is given, or where there is no description, such evidence is inadmissible.' The evidence is admissible to construe and apply a description, not to show what was intended to be expressed." [1 Reed, Stat. Frauds, sec. 408.] "The subject-matter of the agreement must all be included in the memorandum, and must be described with sufficient exactness to render its identity certain upon the introduction of extrinsic evidence, simply disclosing the situation of the parties at, and immediately before, the time of making the contract. Parol evidence is admissible to show the surrounding circumstances and position of the parties and thus to explain the meaning and application of the descriptive language, and thereby identify the subject-matter. . . . . But, if, by this means, the subject-matter is not certainly ascertained, parol evidence cannot be used to go further and actually supply a substantive part of the agreement, which has been entirely omitted from the memorandum or insufficiently expressed. It is enough that the subject-matter is substantially stated, and that no material portion of it is left to be wholly supplied by parol evidence; it need not be set forth with all its details, with perfect, exhaustive accuracy." [Pomeroy, Contracts, sec. 90. See also Benjamin on Sales (6 Ed.), sec. 213 and Story on Sales (4 Ed.), sec. 269.] "A memorandum must definitely fix the subject-matter to which it applies. It is not essential that it contain a particular description of the subject; but it must contain some statement or reference by which it may be completely identified. Parol

evidence is admissible to apply words used to the object referred to." [8 Am. & Eng. Ency. Law (1 Ed.), 725-726.]

Having thus noticed what the books require in the matter of description of subject-matter, it is next in order to examine as to the mode and manner of applying a general or indefinite description of the subject-matter and of identifying the chattels therein referred to.

The eminent text-writers on the Statute of Frauds all agree that parol evidence is admissible to apply the description in the writing to the subject-matter sought to be described and to identify the subject referred to if insufficiently described. Wood on Statute of Frauds, sec. 353, says: "It is not necessary that the agreement should contain a very precise description of the property to be sold, as parol evidence is admissible to identify it." See also sec. 396, where the same author says: "Parol evidence is admissible to identify the subject-matter of the contract," and by way of example says: "Where the vendor of leasehold premises wrote a letter to his solicitor stating, 'I have closed with Mr. W. for this place,' It was held that parol evidence was admissible to show what 'this place' was." [Waldron v. Jacobs, 5 I. R. Eq. 131.] So parol evidence was admitted to show what was meant by the expression "your wool" in a letter written by defendant's agent to plaintiff upon which letter the contract was based. [Macdonald v. Longbottom, 1 E. & E. 977; affirmed Exch. Ch. Ib. 987.] Browne on Statute of Frauds, sec. 409, says: "On the other hand, it is competent to show by oral evidence the circumstances under which the written agreement was made, so far as they may tend to aid the construction or application of its contents." (See also sec. 375.) 1 Reed, Statute of Frauds, sec. 416, says: "Oral evidence is admissible and essential to apply the writing to its subject. The rule is a general one applying to all writings, whether within the purview of the statute of frauds or not for no matter how detailed the descript-

ion, the last step in process of identification must take place *in pais.*" Pomeroy on Contracts, sec. 90 says: "Parol evidence is admissible to show the surrounding circumstances and position of the parties, and thus explain the meaning and application of the descriptive language, and thereby identify the subject-matter." Story on Sales, sec. 269, says: "Verbal testimony would, of course, be admissible to prove, whether the terms of the contract have been complied with, and how far they have been observed, and in what sense they were used by the parties, and what was their technical meaning; but not to prove what they were." Benjamin on Sales, sec. 213, says: "Although parol evidence is not admissible to supply omissions or introduce terms, or to contradict, alter or vary a written instrument, it is admissible for the purpose of identifying the subject-matter to which the writing refers. Thus, where a written letter contained an agreement to purchase 'your wool' parol evidence was admitted to apply the letter, and show what was meant by 'your wool.'" As illustrative of this subject, sec. 413, vol. 1 of Reed on Statute of Frauds, is herein inserted with numerous examples. The description of the subject-matter in a memorandum pertaining to the sales of personalty which were held sufficient.

"While the same rules apply to personalty as those which have been given in the preceding section, the cases, as a rule, show a somewhat greater latitude of interpretation. The following are examples of written contracts relating to personalty which were regarded as adequately describing the subject-matter. Where there was a contract by letter for purchase of 'your wool' accepted by a letter of the vendor, parol evidence is admissible to show that the wool was partly that of the vendor and partly some he could acquire through his neighbors, Lord Campbell, holding that the Statute of Frauds did not apply, said: 'I am of opinion that, when there is a contract for the sale of a specific subject-mat-

ter, oral evidence may be received for the purpose of showing what that subject-matter was, of every fact within the knowledge of the parties before and at the time of the contract.' There was parol proof which indicated that one of the parties intimated that, in his own opinion, the wool amounted to a given quantity; it turned out afterwards to be of a greater quantity; a tender of the latter was held good. In the Exchequer Chamber, Byles, J., thought it a case of latent ambiguity. Where a memorandum was as follows: 'Mr. Newell, 32 sacks culasses at 39s, 280 lbs.,' etc., oral evidence of the trade of the parties was admitted. to show that the one being a baker and the other a flour dealer, a sale of flour was meant; there was also a correspondence between the parties which indicated the nature of their business. Where the defendant wrote the plaintiff speaking of 'the boxes which I bought of you at ten shillings,' and requesting the plaintiff to deliver them to a certain third party, 'as also a fine black,' the memorandum was regarded as sufficient. A memorandum which does not give the size and weight, as of bales of cotton, is not therefore insufficient, average size and weight being presumed. Semble, that where 'this hemp' is spoken of parol evidence is admissible to identify a particular lot, though the writing does not specify the quantity. The case in the note, whose syllabus is given at length, is an example of the care with which the meaning of the memoranda made to comply with the Statute of Frauds is sought to be discovered."

In Halliday v. Lesh, 85 Mo. App. 285, by a contract in writing, plaintiff agreed to sell defendant a safe of a certain kind without designating any particular safe. While the statute was not insisted on in this case, plaintiff's salesman was permitted to testify that at the time the order was made, plaintiff had a safe answering the description of that mentioned in the order and that it was included or sold by said order. Held, not error. The case of Ontario Deciduous Fruit Growers' Assn.

v. Cutting Fruit Packing Co., 53 L. R. A. (Cal.) 681,. was on a written contract by which the fruit of certain orchards had been purchased. The orchards were described as follows: "Sundry orchards in Ontario and Cucamonga." The court held that it showed on its face that it was not the purpose of the contract to include all the orchards in the district named and it therefore became necessary to resort to oral evidence to explain what orchards were meant and that it was proper therefore, to introduce oral evidence thereon. So much for the authorities and precedents on the question.

The rule permitting the introduction of parol to identify the subject-matter is treated as not subversive of the statute nor inconsistent with the general rule requiring all of the essential terms of the contract to be in writing, as the law regards a general and somewhat indefinite description of the subject-matter in sales of personalty as a compliance therewith in stating that particular term of the contract, and if the subject-matter be so designated in the writing that it may be identified by the reception of parol, tending only to endue the court and jury with knowledge of the facts and circumstances surrounding the parties at the time of the transaction and thus fit the description to the subject of the contract, it is sufficient. In a case where the memorandum is silent as to the subject-matter, the law will not permit the term to be added by parol nor will the law permit the term to be enlarged by adding other subject-matter to the subject-matter therein mentioned. The statute does not require a formal contract but only such memorandum as men in the haste and hurry of business. may be supposed likely to make, but nevertheless of such a definite character in all the essentials of the contract that the intention of the parties, their names and relation to each other under the contract, can be gathered from the memorandum itself, leaving nothing to be supplied by parol. [Wood, Stat. of Frauds, sec. 344.] So. in this case, the subject-matter being designated as "ten.

head of cows and heifers" it is apparent the statute is complied with by stating this term of the contract. It is plain from the term stated that the vendor was selling ten head of cows and heifers and the vendee was purchasing. There is enough here to authorize the reception of parol, showing the facts and circumstances surrounding the transaction and thus describing the true situation of the parties at the time of making the contract, and thus enduing ourselves with the knowledge and facts in the minds of the contracting parties, we can intelligently apply the words of the memorandum "ten head of cows and heifers" to the subject-matter, to-wit, the particular ten cows and heifers in the minds of the contracting parties at the time, thus positively identifying the subject of the contract.

It is argued, however, that the purpose of the statute it to prevent the perpetuation of frauds by means of perjury; that the wholesome purpose thereof is to render it so that dishonest men could not be heard to swear in court that this or that was the bargain and thus perpetrate a fraud, and it was intended that the writing only should speak. This is true and the courts have sought to carry out this purpose and intent of the statute so far as applicable without erecting an absolute barrier to business. A strict construction is maintained in so far as the terms of the contract are required to be in writing but the statute must be so construed and applied as will permit the wheels of commerce to move on. However unsatisfactory the doctrine permitting the introduction of parol as herein indicated, may be to those who contend for strict construction, it must be remembered that however minute and precise in matter of detail a description may be, that in the last analysis, resort must be had to parol; that the last and final step in all transactions of this kind is the process of identification, and, if perchance, a controversy arise, resort must eventually be had to parol evidence to fit even the most detailed and minute description to the thing described.

This is necessarily true by reason of the very universality of the law. No rule of law can be made either by legislation or construction, that will work out a just result from black and white in every case, and necessity, which knows no law, has ordained that resort must be had to parol to point out and locate that for which we hold the deed or writing describing it in all the minutia of detail and precision, notwithstanding such minute description, and which we are unable to locate and identify without the aid of oral testimony. When we stop to reason upon the practical business affairs of life, we must know that what is here stated is true and the courts construe the statutes in accordance with common sense and reason as well as with the rules of law.

It is proper at common law to introduce parol to explain and throw light upon the language employed in order that the intent of the parties may be ascertained and the Statute of Frauds makes no change in this rule of evidence. The same rule prevails in reference to the admissibility of parol evidence to explain and apply the note or memorandum under the statute as existed at common law in reference to any written contract. The statute simply requires the contract shall be evidenced by writing but it leaves the law relating to the effect of the written contract and the admissibility of evidence to explain or apply it as it existed at common law. [Wood, Stat. of Frauds, p. 661; Browne, Stat. of Frauds, sec. 344a; Reed, Stat. Frauds, sec. 416; Biest v. Versteeg Shoe Co., 97 Mo. App. 155, 70 S. W. 1081.] These rules are stated by the learned authors and the courts as follows: "It may be laid down as a broad and distinct rule of law that extrinsic evidence of every material fact which will enable the court to ascertain the nature and qualities of the subject-matter of the instrument, or in other words, to identify the person and things to which the instrument refers, must, of necessity, be received." Taylor on Ev. (8 Ed.), sec. 1194: "If the terms be vague and general, or have di-

vers meanings, parol evidence will always be admissible of any extrinsic circumstances tending to show what person or persons, or what things, were intended by the party, or to ascertain his meaning in any other respect." Taylor on Ev. (8 Ed.), sec. 1195. The Supreme Court of the United States, after reviewing authorities extensively, said: "Without attempting to do what others have said they were unable to accomplish, that is, to reconcile all of the decisions on the subject, we think that we may lay down this principle as a just result. That in giving effect to a written contract, by applying it to its proper subject-matter, extrinsic evidence may be admitted to prove the surrounding circumstances under which it was made; whenever without the aid of such evidence, such application could not be made in the particular case." [Bradley v. Washington, etc., Packet Co., 38 U. S. 89; Clark v. Boorman, 85 U. S. 502; King v. Ackerman, 67 U. S. 417; Reed v. Ins. Co., 95 U. S. 30; Gilmer v. Stone, 120 U. S. 586; Daugherty v. Rodgers, 119 Ind. 254.]

While it is true that parol testimony is inadmissible in all cases for the purpose of altering or varying the terms of a written contract, this rule does not obtain when the language employed in the writing is ambiguous and it is sought by parol to elucidate the writing rather than alter, vary, change or extend its terms. It is proper in such cases to receive in evidence, such facts and circumstances as will place the court as nearly as possible in the situation of the contracting parties at the time and place of the making of the contract with a view that they be thus better equipped to adjudge in what sense the language therein employed was used and what, probably, was intended by its use. The result attained in such case is to be derived not from supplying the intention of the parties, but rather, must be derived from the words of the document by enduing the court and jury with a knowledge of the facts and circumstances surrounding and immediately connected with the trans-

action and the true situation of the parties at the time of contracting. [Ellis v. Harrison, 104 Mo. 270, 16 S. W. 198; Riggs v. Meyers, 20 Mo. 239; Black River Lumber Co. v. Warner, 93 Mo. 374, 6 S. W. 210; Sharp v. Sturgeon, 66 Mo. App. 191.]

The rule in this State is stated to be that the identity of the subject-matter of the contract not being definitely ascertained by its terms, parol testimony is admissible to make it certain. [Bray v. Adams, 114 Mo. 486, 21 S. W. 853; Skinker v. Haagsma, 99 Mo. 208, 12 S. W. 659; Amonett v. Montague, 63 Mo. 201; Long v. Long, 44 Mo. App. 141; Halliday v. Lesh, 85 Mo. App. 285; Welsh v. Edmisson, 46 Mo. App. 282; Philbert v. Birch, 4 Mo. App. 470; Greenleaf on Evidence (Lewis Ed.), sec. 286.]

Greenleaf on Evidence, sec. 288, says: "It is only in this mode that parol evidence is admissible (as is sometimes, but not very accurately said) *to explain written instruments;* namely, by showing the situation of the party in all his relations to persons and things around him, or as elsewhere expressed, by proof of the surrounding circumstances. Thus, if the language of the instrument is applicable to several persons, to several parcels of land, to several species of goods, to several monuments or boundaries, to several writings; or the terms be vague and general, or have diverse meanings, as 'Household furniture,' 'stock,' 'freight,' 'factory prices,' and the like; or in a will, the words 'child,' 'children,' 'grandchildren,' 'son,' 'family,' or 'nearest relations,' are employed; in all these and the like cases, parol evidence is admissible of any extrinsic circumstances, tending to show what person or persons, or what things, were intended by the party or to ascertain his meaning in any other respect, and this, without any infringement of the rule, which, as we have seen, only excludes parol evidence of other language, declaring his meaning, than that which is contained in the instrument itself."

Darnell v. Lafferty.

Under the rule above stated, the language employed, "ten head of cows and heifers" being applicable to several head of cows and to several head of heifers, it is competent to show by parol what cows and what heifers were referred to. It seems from a close reading of the authorities that the true rule in cases of this kind is that the contract or memorandum under the statute must be complete in its terms; that the statute is complied with as regards the term "subject-matter" when the subject-matter is personalty, by a designation of the subject-matter which, when taken together with the facts and circumstances surrounding the transaction and within the knowledge of the parties before and at the time of the contract, to be supplied by parol, would lead to a certain identification thereof. This, we must admit, is rather broad and it may seem to be subversive of the wholesome purpose of the statute, but it is the result of the authorities both in this country and England and there is no doubt but that it is the settled law on the question.

The court below erred in sustaining the objection to the sufficiency of the memorandum pleaded in the petition and acted rightly in granting a new trial herein. For the reason stated, the judgment granting a new trial is affirmed. All concur.