THOMAS ROBURT, Appellant, v. WALTON H. HOLMES and CONWAY F. HOLMES, Respondents. THOMAS ROBURT, Respondent, v. WALTON H. HOLMES and CONWAY F. HOLMES, Appellants.

In the Kansas City Court of Appeals, March 5, 1923.

1. **CONTRACTS: Vendor and Purchaser: Breach of Contract: Tender: Tender of Payment upon One Contract Held to Have no Application to Another Contract.** Where vendor of a certain tract of land, representing his brother who contracted to sell another tract of land, refused to accept a tender of payment on brother's contract, *held* such refusal of tender of payment could have no application to the other contract.

2. ———: **Statute of Frauds: Evidence: Oral Agreement Modifying and Amending Written Contract for Sale of Real Estate is Void.** Where an oral agreement was a modification and amendment of a written contract for sale of real estate which is required to be in writing, it is void and constitutes no basis whatever for a cause of action or defense, and any evidence in support thereof is inadmissible.

3. ———: ———: **Oral Agreement with Respect to Real Estate Modifying Written Contracts, Held to be Within Statute of Frauds Requiring Same to be in Writing.** Where there were two written agreements for sale of separate tracts of real estate to plaintiff, an

195

oral contract which made the closing of one contingent upon the closing of the other, is such a modification of the written contracts as to bring it within section 2169, Revised Statutes 1919, of the Statutes of Frauds.

Appeal from the Circuit Court of Jackson County.—
*Hon. James H. Austin*, Judge.

AFFIRMED (both cases).

*Ringolsky & Friedman* and *Wm. G. Boatwright* for Roburt.

*Gossett, Ellis, Deitrich & Tyler* for Holmes.

ARNOLD, J.—This is a suit in equity, instituted by Thomas Roburt, as plaintiff, against defendants jointly to compel specific performance of a real estate contract, to recover the sum of $5,000, and to charge with vendee's lien in favor of plaintiff two separate tracts of land, one belonging to defendant Walton H. Holmes, being lot 105, block 8, McGee's Addition to Kansas City, Missouri, and the other belonging to Conway F. Holmes, being lot 106, same block and addition. The lots are 49½ feet each in width and are adjacent. The south line of lot 106 is 99 feet north of the northeast corner of Fourteenth and Walnut streets, and lot 105 joins it immediately on the north.

On January 26, 1920, plaintiff entered into a written contract for the purchase from Conway F. Holmes of lot 106, above described, at the price of $80,000, of which $5,000 was to be paid at the signing of the contract and to be deposited with J. M. Clark; $20,000 to be paid in cash on delivery of the warranty deed, and the balance of $55,000 to be represented by notes secured by deed of trust on the lot. The contract was to be closed and deed delivered not later than March, 1920.

On the same date a similar contract was entered into between plaintiff and Walton H. Holmes for the purchase

of lot 105, for $70,000, of which $1,000 was to be paid on signing of the contract and deposited with J. M. Clark; $19,000 to be paid upon delivery of the deed on April 1, 1920, and the balance to be represented·by notes secured by deed of trust on the lot. Each contract contained the following forfeiture clause:

"If the seller has kept his part of this contract, by furnishing good title as herein provided, and the buyer fail to comply with the requirements within five days thereafter, then the money deposited as aforesaid is forfeited by the buyer, and this contract may or may not be thereafter operative at the option of the seller. Time is of the essence of this contract."

The petition charges that plaintiff called upon defendant Conway F. Holmes on March 1, 1920. "and asked for a change in the terms of the contract made with him, described herein, so as to enable him.to pay $5,000 in cash on that date to said defendant, Conway F. Holmes, and the balance of the required cash payment within 15 days thereafter. This was acceptable to said Conway F. Holmes, but when payment of said $5,000 was·to be made, the defendant Walton H. Holmes asked that the check be made payable to himself and his co-defendant, Conway F. Holmes, jointly. Said defendant further requested plaintiff to make and execute to them respectively, notes called for by the terms of said two contracts, described herein. Plaintiff states that on March 1, 1920, he paid $5,000 on, as he understood, the contract made by him with defendant Conway F. Holmes."

Plaintiff states that defendants have cashed said check so made payable to both of them and that "they wrongfully withhold from him the said sum of $5,000, together with said notes and deeds of trust."

The petition further alleges that a few days later plaintiff and his wife executed the two sets of notes and that, thereafter, on March 10, 1920, in pursuance of the agreement with defendant Conway F. Holmes, he tendered to him $10,000 on that contract, but that

Conway F. and Walton Holmes, confederating together, and to force him to consummate his contract with Walton, claimed that the $5,000 paid on March 1, was paid $2500 to each of them, on account of their separate contracts; and so confederating, Conway refused to accept the $10,000 tendered March 10, on account; that on April 21, he tendered Conway F. Holmes $20,000 which, with the $5,000 paid March 1, and two notes for $27,500 each, aggregated the $80,000 purchase price of lot 106; but that Conway refused to accept said $20,000 and the notes and to convey the lot.

The petition further alleges that J. M. Clark did not cash the checks of $1,000 and $5,000 for the initial cash payments and that defendants knew that Clark did not cash them; that plaintiff has received nothing for his $5,000 paid on March 1, nor for the notes and deeds of trust; that other persons were interested with him in the contracts, but that they have assigned to him all their rights in said contracts and said sum of $5,000; that defendants each hold $2500 of said sum, claiming the same as part payment for the real estate owned by each of them respectively.

The prayer is for specific performance of the contract with Conway F. Holmes and judgment against both defendants for the $5,000 paid on March 1, 1920, and that plaintiff may be given a lien on both lots respectively for said sum of $5,000 and interest; that defendants be enjoined from negotiating the notes and be directed to deposit them in court; and that the same be ordered cancelled.

The defendants answered jointly by general denial, and, as further defense and cross petition, admit the execution of the contracts, copies of which are attached to plaintiff's petition, and allege that, at the same time and as part of the same transaction, it was verbally agreed between the parties that plaintiff would carry out both contracts, and would not carry out one without also carrying out the other; that he made out and de-

livered to be cashed, two checks, one for $1,000 on the Walton Holmes contract and one for $5,000 on the Conway F. Holmes contract; that he represented and stated that he had money in the bank against which the checks were drawn and that the same would be paid out of such money; that they were delivered to J. M. Clark to be by him cashed and the money held as part payment on the contracts; that the checks were not good; that plaintiff did not have the money in the bank to pay said checks; that defendants had no knowledge that the checks were not good, and that they relied on such representations; that on or about March 1, 1920, defendants, believing that said checks had been cashed by Clark and that he had the money therefor in his hands, the plaintiff, under the terms of the Conway F. Holmes contract, being obligated to make the balance of the payments thereon and complete the purchase, but being unable to do so, came to defendants and requested an extension of time until April 15, 1920, on both purchases, and agreed that if such extension were granted on both contracts, he would pay an additional $5,000 to apply one-half on each contract; that defendants agreed to such extension, with the further agreement that both contracts be closed at the same time, and neither without the other; and if not so done, the $5,000 then paid should be forfeited as liquidated damages, in addition to the other deposits of $1,000 and $5,000 respectively; that plaintiff agreed to these conditions but that he failed to carry out his contracts and agreements in respect to the $5,000 deposit of March 1, 1920; that defendants, on May 15, 1920, notified plaintiff that notwithstanding his failure to perform his said obligations they were willing to convey to him both properties together on or before June 10, 1920; that time was of the essence of said contracts and that plaintiff had wholly failed to complete his purchases. The prayer is for the quieting of the respective titles.

Plaintiff's reply is a general denial and, as special

answer, he denies that he ever agreed to carry out both contracts mentioned in the petition and would not carry out one without the other, and that such contracts, even if made by verbal agreement, were void under the provisions of the Statute of Frauds; denies that he ever requested an extension of time until April 15, 1920, as pleaded in defendant's answer, and declares that even if said contracts had been made as alleged by defendants, the same would be void under the Statute of Frauds.

Upon the pleadings thus made, the cause went to trial to the court.

Plaintiff then withdrew his prayer for specific performance and on November 21, 1921, judgment was rendered against defendant Conway F. Holmes for $2500 and interest from date of filing suit, in the aggregate $2775, together with costs of suit, and that the checks, notes and deeds of trust given by plaintiff to defendants be cancelled and that the written contracts between plaintiff and defendants respectively, as described in the pleadings, and all rights thereunder of either party be cancelled and terminated. The judgment was in favor of Walton H. Holmes.

Motions for new trial by plaintiff and Conway F. Holmes were duly filed and by the court overruled. Whereupon plaintiff appealed to this court, case No. 14441, and defendant Conway F. Holmes appealed from the judgment rendered against him, case No. 14597.

We have carefully read the entire record presented and learn therefrom that one J. M. Clark, assisted by Fred B. Stanley, was the negotiating sales agent. Plaintiff approached Clark for a tract of land with a frontage of 150 feets centrally located, upon which he desired to erect a large building. Clark directed plaintiff's attention to the northeast corner of Fourteenth and Walnut streets. The frontage south of the Conway F. Holmes lot was owned by two or three other persons. Clark succeeded in securing contracts for the land south of the Conway F. Holmes lot, either for sale or long time lease, but those arrangements appear to have failed.

Clark, or Stanley, approached the Holmes brothers for the sale of their lots, having plaintiff in mind as a purchaser, and learned that the lots would not be sold separately; that both had to be purchased, or neither. The Walton H. Holmes lot was unimproved, but the Conway F. Holmes lot had a building upon it, occupied by tenants. On January 26, 1920, the contracts referred to in the petition, and attached thereto as exhibits, were presented by Clark's office to defendants. The respective terms embodied in each contract are referred to above. Both contracts provided for the presentation of abstracts of title and time for examination thereof and the curing of any defects therein, together with the usual forfeiture clause covering money deposited. The Conway F. Holmes contract also recited that his lot was subject to an existing lease running from January 16, 1920, to January 15, 1923, having a six months cancellation clause, and this contract provided that the seller should at once notify the lessee that the lease was terminated, which was done.

Accompanying the Walton H. Holmes contract, for the cash payment as per its terms, was a check dated January 13, 1920, to J. M. Clark, agent, for the sum of $1,000, signed by plaintiff and drawn on the Security National Bank of Kansas City, Mo., and containing the following recital:

"I represent the above amount is on deposit in said Bank or Trust Company in my name, is free from claims and is subject to this check." Accompanying the Conway F. Holmes contract was a check signed by plaintiff, dated January 26, 1920, for $5,000, with the same wording as the $1,000 check, excepting that it included a further recital that it was part purchase money on Lot 106, Block 8, McGee's Addition.

The testimony shows that on January 21, 1920, the drawer of the check had on deposit in the Security National Bank, in his own name, $298.74, and less than that on January 27 and 28; that on January 29, he had

$5202.99, and on February 4, his balance was $2627.52. The testimony further shows that on February 4, 1920, plaintiff opened an account in said bank under the name of "Auto Club Company" in the sum of $2480. On February 3, plaintiff had in his name in said bank $5,175.59 and on February 4, as stated, this balance was reduced to $2627.52, and the automobile club account opened in the amount stated. On February 6, the Thomas Roburt balance was reduced to $1433.53 and this account continued to be reduced until March 1, 1920, when it was $562.29, and the auto club account on that date was $3630.

Plaintiff testified that when he gave these checks on January 26, 1920, the agent Clark owed him on another account $5,000, and that he got this $5,000 and deposited it on January 29, in his own personal account which, with $202.99 made his balance $5,202.99. Further he testified that it was understood between him and Clark, the seller's agent, that the checks of $5,000 and $1,000 respectively should not be cashed until the deals were closed. Stanley, Clark's associate, denied that the checks were to be so held. However, the testimony shows that they were not presented to the bank for payment until soon after March 10, 1920, and payment thereof was refused because of insufficient funds. There is also testimony tending to show that payment of the checks had been stopped by plaintiff soon after March 10, 1920.

On March 1, 1920, the day on which Conway F. Holmes's contract was due to be closed, plaintiff and his attorney, W. H. L. Watts, accompanied by C. E. Templeton who, it appears, unknown to defendants up to that time, had become interested, together with J. H. White and W. E. Davis, under plaintiff, in the deal for the two lots, but whose interests prior to this suit had been assigned back to plaintiff, both as to the contract and the $5,000 in dispute, went to the office of defendants at the Pioneer Trust Company and Watts and Walton H. Holmes (the latter acting both for himself and his brother Conway F.), plaintiff, Templeton, John J.

O'Keefe and C. C. Balis, standing grouped within a few feet of each other, held conversation. There is testimony tending to show that the purpose of plaintiff, Watts and Templeton, in going there, was to request an extension of time on the Conway F. Holmes contract.

A day or two prior to March 1, someone, possibly Stanley, called up the Pioneer Trust Company, which attended to the details of handling the Holmes real estate and of which company they were officers, and stated that Roburt would be ready on March 1, to close these contracts, and requested that the papers be prepared. O'Keefe, and officer or employee of the Trust Company, then prepared the two deeds of conveyance to be made by the Holmes brothers, and they were signed and acknowledged, ready for delivery. Watts previously had passed favorably upon the titles. O'Keefe, at the same time, prepared for execution the deed of trust and two $25,000 notes on the Walton Holmes lot, and the two $27,500 notes and deed of trust on the Conway Holmes lot. Plaintiff and his wife executed these on March 3. The notes, deeds of trust and both deeds of conveyance were left with O'Keefe, or the Trust Company, to await final deliveries as then arranged.

On this occasion, March 1, mentioned above, Templeton made and delivered to Walton H. Holmes a check for $5,000 on the Traders National Bank of Kansas City, drawn by Community Building Co., by E. C. Templeton Treas., to the order of W. H. & C. F. Holmes. Defendants cashed that check, each receiving $2500. Plaintiff and his party, at the time, had with them a picture, photograph or architests' drawing which was exhibited by Watts to Walton H. Holmes, showing a building covering all of the Walnut Street frontage from the northeast corner of its intersection with Fourteenth Street northward to and including the two lots in controversy, and stated to Mr. Holmes that such drawing, or picture, represented the proposed improvement of the assembled properties, and that everything was mov-

ing nicely toward consummation; that several men interested were busy and it was hard to get them together, and they were not ready to close the deal that day and wanted an extension of time. Watts was the chief spokesman of the party and was representing plaintiff.

The testimony further shows that the Pioneer Trust Company, by agreement and with the consent of defendants, was to receive part of Clark's commission on the sale. Unknown to defendants, plaintiff had an arrangement with Clark to receive part of Clark's commission, which was to be paid by defendants. It further appears that, unknown to defendants, plaintiff had an agreement with Clark not to cash the $1,000 and $5,000 checks delivered with the contracts on January 26, and that on March 10 or 11, plaintiff stopped payment on same. So far as the evidence discloses, plaintiff at no time had a sufficient balance in his own name in the bank upon which the checks were drawn to pay them.

The testimony further shows that at the time Watts was exhibiting the drawing of the proposed building to Walton H. Holmes and stating that the deal was going through nicely, plaintiff knew that his deal for the corner property had failed and the $5,000 which he had received from Clark represented the draw back deposit thereon, and was deposited in the Thomas Roburt account on January 29. On March 20, 1920, Watts and Templeton again went to the office of defendants, saw Walton H. Holmes and offered to pay him $10,000 more on the Conway F. Holmes lot. The offer was refused, but Mr. Holmes offered to accept it as a further forfeit payment, one-half on each contract. This offer Templeton refused.

Watts testified that he then learned, for the first time, that there was any doubt that both contracts would be closed, and that he urged Templeton to pay as per Mr. Holmes's request; that when he offered the $10,000 on March 10, and $20,000 on April 21, he supposed the

$1,000 and $5,000 checks of January 26 had been paid On April 21, claiming that the $5,000 paid March 1, should apply only on the Conway F. Holmes contract of January 26, Watts tendered a certificate checks for $20,000, and demanded that the sale of that lot be closed. This was refused for the alleged reason that it was insufficient in amount and not in accordance with the verbal conditions, as claimed by defendants, of the receipt of $5,000 on March 1, 1920.

Up to this point there is no substantial conflict in the evidence.

The principal difference between the respective litigants arises out of what was said and done on March 1, when the $5,000 was paid by check to W. H. and C. F. Holmes. Witnesses for plaintiff testified that on the occasion in question the $5,000 was paid to apply on the Conway F. Holmes contract which was due to be closed on that day, and the balance to be paid a few days later; while witnesses for defendants testified that on the occasion in question Roburt, Watts and Templeton, speaking through Watts, stated that they wanted more time on both contracts and were willing to pay $5,000 for an extension; that Mr. Walton Holmes replied that would be all right; and that as he had only $1,000 up on his contract, that was not a sufficient amount on a $70,000 purchase. That accordingly the check was made out payable to W. H. and C. F. Holmes; that it was agreed that the plaintiff was to pay $5,000 for an extension of both contracts to April 15, 1920, which was about six weeks on the Conway F. Holmes contract and 15 days on the other; that this payment was to be treated as a forfeit, or liquidated damages; that the check was made out as suggested by Walton H. Holmes, and that one-half of the $5,000 was to go to each of the Holmes brothers on their respective contracts.

The first point urged by plaintiff is that the $5,000 paid on March 1, was on the Conway F. Holmes contract only, and the acceptance of such payment by the

seller operated as a waiver of performance on that date and thereafter, if the purchaser offered to perform within a reasonable time, the seller was bound to accept such performance.

Upon the theory that plaintiff is right in his contention that the $5,000 paid March 1, 1920, was on the C. F. Holmes contract alone, his argument is sound and his citations applicable. However, the Theory of defendants as to the purport of the $5,000 payment in controversy is wholly antagonistic, and there is testimony supporting each view.

Again, plaintiff urges that both contracts were breached by the respective sellers on March 10; that where a vendor breaches his contract he is not entitled to retain the deposit of any payment made on account of same, as forfeit, or liquidated damages. It is insisted in this connection that as $10,000 was tendered on the C. F. Holmes contract and was refused, that this contract was thus breached and that the W. H. Holmes contract also was breached by the announcement on the tender of the $10,000 that the contracts were to be closed together and that he (Walton) would not accept the money unless it was to be applied on both.

We are unable to agree with plaintiff in this latter contention. If, as he insists, payment was tendered only on the C. F. Holmes contract, the refusal of W. H. Holmes, who represented his brother, to accept it, could have had no application to the W. H. Holmes contract. We find nothing contrary to this rule in Mastin v. Grimes, 88 Mo. 478, and the other citations to which out attention has been directed by plaintiff. It is asserted by plaintiff that no payment was offered on the W. H. Holmes contract on March 10, 1920, and that the same was not due to be closed until April 1, 1920. We hold that the contract was not breached by the sellers at the time and in the manner claimed by plaintiff.

This ruling also applies to the subsequent tender of $20,000, and whether or not the C. F. Holmes contract

was breached by the seller will depend upon our ruling on plaintiff's point 3, wherein it is urged that the agreement claimed by defendants to have been made on March 1, was oral and, if made, was a modification and amendment of a written contract for the sale of real estate which is required to be in writing; that such oral agreement is void and constitutes no basis whatever for a cause of action, or defense, and any evidence in support thereof is inadmissible.

We have, then, this situation before us: Plaintiff insists that the agreement relative to the payment of the $5,000 on March 1, even under defendants' theory and evidence is void because of the Statute of Frauds, while defendants maintain the opposite view. Upon the solution of this problem hinges the result of this appeal.

In a nutshell, plaintiff's position is: (a) The alleged oral agreement made the closing of one contract contingent on the closing of the other at the same time. (b) It made the sale of one lot contingent on the sale of the other. (c) It changed the aggregate amount of the forfeit by the purchaser if he defaulted on either contract from $6,000 to $11,000, and (d) it changed the condition of the forfeiture in each contract to the effect that if the buyer failed to comply with the requirements of same within five days after good title was furnished "then the money deposited as aforesaid" should be forfeited by the buyer, to a condition that, if the buyer did not close the purchase of both lots on April 15, then a forfeiture should occur; that two written contracts were thus modified and changed by oral agreements.

That part of the Statute of Frauds applicable to the case is (Sec. 2169, Rev. Stat. 1919):

"No action shall be brought . . . upon any contract made for the sale of lands, tenements, hereditaments, or any interest in or concerning them, or any lease thereof for a longer time than one year, or upon any agreement that it is not to be performed within one year from the making thereof, unless the agreement

upon which the action shall be brought, or some memo-
randum or note thereof, shall be in writing, and signed
by the party to be charged therewith, or some other per-
son by him thereto lawfully authorized, and no contract
for the sale of lands made by an agent shall be binding
upon the principal, unless such agent is authorized in
writing to make said contract.''

In the application of this statute, it has been held
that its principal design was to protect parties from the
performance of contracts that they never made. The
question before us for solution is whether the payment
of the $5,000 on March 1, 1920, was made under such
an oral agreement substantially affecting the terms of
the C. F. Holmes written contract, in evidence, for the
sale of land. We think it was under both plaintiff's and
defendants' theories of the case. It is not disputed that
any oral agreement prior to the execution of the written
contract was, by intendment, merged into the written
contract which is presumed to contain all the essentials
of the agreement. The written agreements in this case
contain no stipulation that the performance was con-
tingent upon the sale of the two lots together. If we
accept defendants' contention as true, the oral contract
made the closing of one, contingent upon the closing
of the other, and is such a modification of the written
contract as to bring it within the Statute of Frauds.

This question was fully and ably discussed in an
opinion by Ellison, J., in the case of Rucker v. Harring-
ton, 52 Mo. App. 481, to which our attention is called.
The court said:

''The great weight of authority favors the proposi-
tion that subsequent verbal changes or modifications are
not allowed to affect the original writing. (Citing cases.)
And this is said to be true without regard to whether
the oral agreement relates to those things which, stand-
ing apart, would not be affected by the Statute of
Frauds.''

We, therefore, hold against defendants in so far as
the C. F. Holmes contract is concerned.

As to the W. H. Holmes contract, the testimony shows that plaintiff never undertook to comply therewith; and it necessarily follows that the above rulings do not apply thereto, and that the judgment should be affirmed.

The remaining point for consideration is the contention of defendant Conway F. Holmes that under the equity rule that one who seeks equity must do equity, plaintiff should not recover. Plaintiff counters with the charge that defendant is equally culpable in this respect and points out wherein he thinks defendant has failed to do equity. We are not seriously impressed with the position of either party in this respect. Each bases his contention upon his theory of the case and the application of well known equity rules to facts and circumstances in evidence. We rule against both parties on this phase of the case, basing our conclusion upon all of the testimony as shown by the record.

For the reasons above stated, we hold the entire judgment, as rendered, was proper and should be affirmed in both cases. It is so ordered. All concur.